# United Brethren Mutual Aid Society of Pennsylvania *versus* White.

1. Where an application for a policy of insurance contains an interrogatory, as to the occupation of the applicant, he must disclose that in which he is engaged at the time of making the application.

2. Where, in answer to such an interrogatory, the applicant replied "Laborer," and it appeared, that as a matter of fact he had suspended labor for several years prior to making the application, either on account of old age, or other continuous disability,—*Held*, that the answer was misleading, and the policy issued in pursuance of the application aforesaid was avoided.

3. *Semble*, that the rule above laid down would not embrace a mere temporary suspension of the alleged occupation.

4. An application for a policy of insurance contained, inter alia, the following questions and answer, "A. Are you married? B. Give name of consort. A. ———. B. Widdower." The applicant had a wife living at the time. *Held*, that the answer was responsive to both questions, that it intimated that the applicant was a widower, that it constituted a material misrepresentation, and that therefore the policy issued in pursuance of the said application was avoided.

February 21st 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, STERRETT and GREEN, JJ. TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Lackawanna county:* Of January Term, 1882, No. 45.

Debt, by Patrick White and Catherine White his wife in right of said wife against the United Brethren Mutual Aid Society of Pennsylvania, upon a certificate of membership or policy of insurance issued by the corporation defendant upon the life of one Patrick Murray in the sum of $1,000 payable to Catherine White, daughter of the said Murray.

On the trial, before HANDLEY, P. J., the following facts appeared :—On or about January 3d 1878, Murray made application for the policy in suit, signing an application in the usual form which contained, inter alia, the following questions with the answers annexed :

"What is your age and occupation? Years 62 ; months 4, days. . . Occupation—Laborer. A. Are you married? B. Give name of consort. A. ——— B. Widdower."

Said application contained, inter alia, the following clause :

"It is hereby agreed that the above and foregoing application with the declarations and statements therein made, shall form the basis of the contract by and between the above named applicant and the U. B. Mutual Aid Society of Pa. ; and that if any of the statements and answers therein made are

[Mutual Aid Society *v.* White.]

untrue and false, or any facts touching the health of the applicant are concealed, or any statements or untrue answers made tending to deceive the society, . . . . that then in either event this contract shall be forfeited, and the policy issued to the applicant hereupon, shall not be binding upon the society."

Murray was afterwards examined by the physician employed for that purpose by the company and a certificate was then given by said physician as to Murray's condition. The policy in suit was subsequently issued bearing date January 18th 1878, and containing, inter alia, the following clause : "And it is also understood and agreed by the persons named in this certificate, that if the proposals, answers, declarations and representations made by the aforementioned member in his application for membership, bearing date the 3d day of January 1878, and which are hereby made part and parcel of this certificate, as if fully herein recited, and upon the faith of which this agreement is made, shall be found in any respect untrue, then in such case this certificate shall be null and void."

On September 12th 1878, Murray died. Proofs of death were at once forwarded to the society, and the amount of the policy was demanded. The society, however, refused payment, alleging that the answers in the application were untrue, whereupon the present suit was brought.

There was evidence tending to show that at the time of making the application Murray was in reality nearly one hundred years of age, that he was infirm and had been unable to work for a number of years, and that he had a wife living apart from him whose name was Margaret.

The defendant requested the court to charge, inter alia, as follows :

"That if the jury find from the evidence that at the date of the application Patrick Murray had no occupation and was by age unfitted for labor, and that this answer to the interrogatory as to occupation tended to deceive the said society, then the plaintiff cannot recover." "*Answer.* This point we affirm, and refer you to what we said in our general charge concerning the occupation of Murray."

"That if the jury believe that at the time of the application Patrick Murray was not a widower, the plaintiff cannot recover." "*Answer.* This point we also affirm, and refer you to our general charge for what we said on that point in explanation of the peculiar location of the answer in the application."

The court in its general charge instructed the jury that if Patrick Murray was, at the time of making the application, more than sixty-two years and four months of age, the plaintiff could not recover. He further charged, inter alia, as follows : "The questions presented on the part of the plaintiff show that he

(Murray) was a man in full life at the time the application was made, and that he gave his age as sixty-two years and four months, as near as he could get at it ; that he lived in this city, and that he was examined by the usual and ordinary physician who makes examinations for this company ; that this physician filled up the certificate which is required by the company. . . . .

"Now, is it true that Murray stated that he was a widower ? The application in this case will be sent out with you, and it will be your duty to take it up and look at that part of the application. When you do so, you will find that the question reads thus, 'are you a married man?' To that question there is no answer whatever; there is a dash made by a pen where the answer ought to be, and hence, it is your duty to treat that answer the same as if it was in blank. The next question following, 'give name of consort;' under that head is the word widower, spelled with two d's. Now it will be for you to say, when you reach this part of the case, whether the plaintiff is bound by this answer thus dislocated. There can be no doubt but that if the word ' widower,' was writen in its proper place, in answer to the interrogatory, ' are you married,' that the plaintiff would be bound, and it would be your duty, even on that arswer alone, to return a verdict in favor of the defendants in this case.

"Now it will be for you, and we leave that as a question of fact for you to say, whether he did answer that he was a ' widower,' or whether by mischance or misapprehension the word ' widower ' was written where the evidence shows that it should not have been. The word ' widower' is not responsive to the interrogatory put in the application. The interrogatory was, ' give name of consort,' which means, in plain English, give the first name of your wife, and perhaps might also carry with it her maiden name ; but so far as the disposition of this case is concerned, the intention was evidently to ascertain her first name ; that is, to ascertain whether it was Winnie, Honora, Alice, Bridget, or any other name. We find, however, written on the application, the word ' widower' dislocated, and in an improper place, and not responsive to the interrogatory. Now we leave it to you to say whether this was intended to be placed in the other column, and whether he did answer that he was a ' widower.' Of course, if you find from the evidence that he did, then there can be no recovery ; if you find that he did not, then of course on this point the plaintiff must prevail. . . . .

"Now the last point applies to his occupation. He stated that he was a ' laborer,' and the construction contended for on the part of the defendants, is his occupation then and there at the time he made the application. That, we say to you, is altogether too narrow a construction to place upon cases of this kind.

[Mutual Aid Society v. White.]

When an insurance company presents an application to a man, and there is written in it or printed in it an interrogatory, 'what is your occupation,' the presumption is that the answer has covered the whole period of the applicant's life, provided there is nothing more said in the application upon that point, because if a man commences in life as a laborer, and he continues working down to old age as a laborer, then he is a laborer, and has been during all his lifetime that is, during the years of his work. If there was a qualifying sentence in the application immediately after that interrogatory, 'have you changed your occupation recently, and if so, how long since,' then of course that would bring out an answer showing that he might have been a boatman when young, and was president when he was insured. You will see the force of this answer. We, therefore, instruct you that the answer 'laborer' in evidence shows that Murray was a 'laborer' in his former years, and covers the question in the application. Murray should not be held down to the very day when he made the application."

Verdict and judgment for the plaintiffs. Defendant thereupon took this writ, assigning for error, inter alia, the answers of the court to its points above cited, and the portion of the charge above set out.

*Chas. L. Hawley* (with whom were *W. H. Jessup* and *Fred. W. Gunster*), for the plaintiff in error.—The occupation of the applicant for insurance to be disclosed is that in which he was engaged at the time of effecting the insurance : Hartman v. Keystone Ins. Co., 9 Harris 478 ; May on Insurance § 306 ; Angell on Insurance § 179.

Murray's response to the question whether or not he was married was clearly false. His reply was that he was a widower It was for the court to construe the meaning of the written application, and not for the jury : Cox v. Freedley, 9 Casey 124 ; Esser v. Linderman, 21 P. F. Smith 76 ; Welsh v. Dusar, 3 Binn. 337 ; Heath v. Page, 12 Wright 143 ; Beatty v. Insurance Company, 2 Smith 456 ; Nellis v. Coleman to use, 11 W. N. C. 112.

*E. N. Willard*, for the defendants in error.—We do not attempt to say that Murray, in his answer as to his occupation, was not confined to his occupation at the time of the answer, but we submit that the remarks of the court, taken in connection with the rest of the charge, did the defendant no harm : Grattan v. Metropolitan Life Insurance Company, 80 N. Y. 281.

The question in the application " Are you married ?" was left unanswered. The interrogatory, " Give name of consort," was answered " Widower." Now, if the company saw fit to issue a policy with one question unanswered, and another with an

[Mutual Aid Society *v.* White.]

answer not responsive to the question, they are estopped from taking advantage of the omission and inaccuracy. " The issuing of a policy on an application which, without fraud, contains no answer to certain questions is a waiver of answer to those questions, even though, in answer to another question, the insured may have said there were no other circumstances affecting the risk. And to avoid the policy in such case, the insurer must prove untrue statements other than those inquired about." May on Insurance § 166 ; Liberty Hall Ass. *v.* Housatonic Mutual Fire Ins. Co., 7 Gray 261; Armenia Ins. Co. *v.* Paul, 10 Norris 520.

As to the second question the answer was not responsive. " If the answer be responsive and true in part, but irresponsive and untrue in part, the last will be only a representation." May on Insurance § 166 ; Buell *v.* Conn. Mut. Life Ins. Co., 5 Ins. Law Journal 274.

Mr. Justice GORDON delivered the opinion of the court, March 13th 1882.

Parties must be held to their contracts, the more especially, when such contracts are reasonable and unambiguous. Patrick Murray contracted with the defendant, the United Brethren Aid Society of Pennsylvania, for a policy of assurance on his life, and in his application therefor he solemnly agrees as follows : " It is hereby agreed that the above and foregoing application, with the declarations and statements therein made, shall form the basis of the contract by and between the above named applicant and the U. B. Mutual Aid Society of Pa.; and that if any of the statements and answers therein made are untrue and false, or any facts touching the health of the applicant are concealed, or any statements or untrue answers made tending to deceive the society, . . . . this contract shall become null and void, and all moneys which shall have been paid shall be forfeited, and the policy issued to the applicant hereupon shall not be binding upon the society." This agreement is repeated in the policy as one of its conditions. In the application appear, among others, the following questions and answers : " What is your age and occupation?" Answer. " Sixty-two years and four months.—Occupation ; laborer." " A. Are you married? B. Give name of consort." Answer. " A. ——— B. Widdower." These questions are very plain and simple, and such as any one, capable of entering into a contract, might readily comprehend. They were also material, not only in themselves, but by the terms of the agreement, and the insurer had a right to expect straightforward and truthful answers, and so the court should have instructed the jury Neither is there any ambiguity about the answers; they are

direct and specific. The assured declared his age to be sixty-two years and four months, and as to this, the only question for the jury was whether this declaration was true or whether it was false. On this point the charge of the learned judge is unexceptionable, and the exception to it is not well taken, for that which is set out as a part of the charge is only a quotation from the evidence. Not so, however, with that part of the answer setting forth the occupation of the assured. The court was asked to charge, that if, from the evidence, it appeared that at the date of the application, Patrick Murray had no occupation, and was by age unfitted for labor, and that his answer, in this respect, tended to deceive the society, the plaintiff could not recover. This point ought to have had a direct and unqualified affirmation, and it was error for the court to say as it did, " we, therefore, instruct you that the answer 'laborer' in evidence shows that Murray was a laborer in former years, and covers the question in the application. Murray should not be held down to the very day when he made the application." The very contrary of this is held in Hartman *v.* Keystone Insurance Co., 9 Har. 466, where it is said, " The occupation of the applicant for insurance to be disclosed is that in which he is engaged at the time of effecting the insurance." It is, indeed, true, that the rule would not embrace a merely temporary suspension of the alleged occupation, but it does embrace a suspension extending through several years, or resulting from old age or other continuous disability.

The court also erred in submitting to the jury, for its construction, the answer to the question, " are you married ? " It was the duty of the learned judge to construe this, as well as every other part of the application. To us there does not seem to be any ambiguity about the reply to this interrogatory. It is, perhaps, true, that properly, the answer " widdower " should have followed question A, but, however put, it is responsive to both the questions. It means that though once married, his wife is now dead, hence, her name is not necessary. Nor do we think the fact, that the word widdower is spelled with two d's, of the slightest consequence; it was certainly not intended for a proper name, and bad spelling is not so rare as, of itself, to create hesitation. The defendant had a right to have an unqualified answer to its fifth point ; if the jury believed that, at the time of the application, Patrick Murray was not a widower, the plaintiff ought not to have recovered.

Judgment reversed, and a new venire granted.