Ellen J. Wall *v.* The Royal Society of Good Fellows, Appellant.

[Marked to be Reported.]

*Insurance—Life insurance—Representations as to health—Affidavit of defense.*

In an action upon a policy of life insurance where the affidavit of defense sets forth that the insured made false representations as to his health in his application, and as to whether his relatives had been afflicted with consumption, and the testimony of the defendant tends to sustain the allegations of the affidavit, a point offered by the defendant embracing the allegations of the affidavit and asking for binding instructions, if the jury believe that the allegations have been sustained, should be affirmed.

*Life insurance—Applications—Warranty as to truth of facts set forth in the application—Contract.*

Where a policy of insurance contains a warranty of the truth of certain facts, the validity of the policy depends on the truth of the warranty.

In such case the engagement of the policy holder is absolute that the facts shall be as they are stated when his rights under the policy attach.

Where an applicant for insurance warrants the truth of facts stated in his application, a statement that he had been attended by a certain physician "one year ago," will vitiate the policy, if it appears that he had been attended by that physician six times within the preceding year.

*Insurance—Practice, C. P.—Amendment.*

In an action upon a policy of life insurance it is proper to allow an amendment after the testimony is closed, so as to make the pleadings conform to the proof, where the application is in the interest of justice.

*Insurance—Life insurance—Proof of loss as evidence of cause of death.*

In an action upon a policy of life insurance a proof of loss setting forth the cause of death of the insured, signed by the plaintiff with her mark, properly witnessed and acknowledged before a magistrate, and referred to by plaintiff in conversations with an officer of the defendant company without denial of its authenticity, is evidence for defendant to show the cause of death, without specific proof of its actual execution by the plaintiff, and its rejection when offered for that purpose is error.

Argued Oct. 29, 1896. Appeal, No. 65, Oct. Term, 1896, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. Term, 1894, No. 756, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of life insurance. Before PORTER, J.

At the trial the defendant claimed that the insured had made certain false representations in his application as to his health, and as to whether his relatives had been afflicted with consumption. It was also averred that he had stated that he had not been attended by a physician within the year immediately preceding the date of his application.

The material part of the policy is contained in the portions of the affidavit quoted in the opinion of the Supreme Court.

Defendant's counsel made the following offer:

The defendant now offers in evidence the statement of the plaintiff, being the beneficiary, furnished as part of the proof to the society defendant, of the cause of the death of the insured, this being for the purpose of showing the admissions of the plaintiff as to the nature of the last illness, and as to the cause of death, of Edmund F. Wall, and the names of the attending physicians.

It was objected because, first, it is incompetent and irrelevant; second, it is not established by proper evidence; and third, it purports to state facts which are necessarily not within the knowledge of the person making the affidavit, if such were made, but must have been made upon hearsay.

The Court: The only evidence that this statement was furnished by the plaintiff to the defendant society is that the officer who has been examined, Mr. Spooner, found it among the papers of the society.   He does not undertake to swear that she furnished this statement, or that she did not furnish some statement, and we do not consider the statement sufficiently proved. It is a paper to which I believe there are two subscribing witnesses, and we, therefore, as the evidence now stands, sustain the objection.   Exception allowed and bill sealed. [8]

Defendant, for the same purpose, offered exhibit No. 7, being the certificate of one Dr. L. S. Wiggins, which was shown to the plaintiff, as constituting part of the official proofs of death.

Objected to as incompetent and irrelevant, and insufficiently proved.

The Court: The objection is sustained for the reason that the paper shows upon its face that the physician writing this letter had not seen him after October 6, 1893, and that he never saw his body dead or alive afterwards, and there is no evidence whatever that this paper was furnished to the defendant society by the plaintiff, but on the contrary, that it was obtained by an officer of the society from the physician, after an interview with the plaintiff.   The objection is sustained.   Exception allowed and bill sealed. [9]

Mr. McQuiston, of counsel for defendant: I will now renew my offer.   The plaintiff in her statement of claim having averred that complete and satisfactory evidence of the death of Edmund F. Wall in accordance with all the requirements of the constitution and by-laws of the said defendant corporation was made and delivered to the proper authorities of the said defendant company, and the witness on the stand having testified that exhibit No. 5 is the official evidence of proof of death received by the society defendant, the defendant now offers in evidence exhibit No. 5, for the purpose of showing the cause of the death and the duration of last illness.

Objected to as before, for the reason that it has not been sufficiently proved, and further as incompetent and irrelevant.

The Court: The defendant in its affidavit of defense not having denied the sufficiency of the proof of death, that question cannot be gone into, and we do not consider the papers established by the evidence to have been furnished by this plaintiff so as to make them admissible as to declarations by her of the cause of death. The objection is sustained. [10]

Mr. McQuiston: The plaintiff and the defendant having rested their case, and it having been disclosed by the testimony of Dr. Wiggins, on behalf of the defendant, without objection, that he had treated Edmund F. Wall, in the months of October and November, 1892, and prior thereto, for catarrh, and that that disease was of such a character that it tended to shorten life, counsel for the defendant move the court to amend their affidavit of defense so as to accord with the proof of Dr. Wiggins in this: that he had treated Edmund F. Wall for catarrh in February, May, June and October, 1892, and on November 3, 1892; this testimony being desired for the purpose of showing the falsity of the answer to the question propounded to Edmund F. Wall in his medical examination, to wit: " When last attended by a physician, and for what cause?" Answer, " One year ago."

Mr. Reid, of counsel for plaintiff: We object to this amendment upon the ground that it comes too late, and that it is an application in the discretion of the court, which discretion ought not to be exercised in behalf of a defendant who, after the cause having been brought on the first day of February, 1894, has had from that time until this moment to fully prepare the evidence and the facts for the trial of this case, and especially in view of the fact that the defendant had expressly neglected in the affidavit of defense to charge the breach of the warranty, so far as medical attendance was concerned, within a year previous to examination in its being medical attendance, so far as pulmonary or lung trouble was concerned, as exhibited by the affidavit of defense ; and the defendant is thereby estopped from alleging anything to the contrary at this point of the trial, and for the further reason that, as the counsel states, this being for the purpose of proving the falsity of the warranty alleged, that it appears by an investigation of the warrant itself, or the paper

referred to, that such could not be the purpose, for the reason that the person who attended the deceased, Edmund F. Wall, within a period of one year, if he was so attended, was Dr. Wiggins, the very physician named by the said Edmund F. Wall, and referred to for the history of his condition, and necessarily referred to by this defendant in its investigations, if the defendant made investigations, before the issuing of its policy or certificate in this case.

The Court: The affidavit of defense as filed alleges that the deceased had, within the period referred to, been treated for lung and pulmonary troubles, and it being alleged by the defense that he died subsequently of lung and pulmonary trouble, any evidence going to show the existence of those troubles at the time of, and prior to, his application would have been admissible, and any evidence as to the existence of a disease which tended to develop into consumption, if such tendency was established by evidence, would have been admissible, and as they have gone to trial, and the case has been tried upon that theory, we decline to allow the amendment. Exception allowed and bill sealed. (7)

The court charged in part as follows:

[If you do not, under the evidence, find that he had phthisis, lung or bronchial trouble or consumption at the time he made these representations, if under the evidence, you do not find that he was so afflicted, and pass further, and do not find that he had within the year been treated for lung or pulmonary trouble, and as to this matter, if he had, within a year, within the time that he said that he had last been attended by a physician, if he had been attended by a physician for lung and pulmonary trouble, then even although he had gotten over it, that would be a violation of the warranty, if it was for lung and pulmonary or bronchial trouble that he was treated within the year; but under the affidavit of defense they would have no right to set up as a defense that he had been treated for something else.] [11]

Defendant's points and answers thereto among others were as follows:

2. By that contract Edmund F. Wall warranted all the statements in his application and all his answers to the medical

examiner to be strictly true, and agreed that neither would he claim, nor should his beneficiary therein named, Ellen J. Wall, be entitled to any benefits from the society defendant unless all such statements and answers were strictly true. *Answer :* This is affirmed; but in order to defeat a recovery upon the ground that any such statement or answer was not strictly true, the defendant must, under the act of assembly and rules of this court, allege the fact in his affidavit of defense. [1]

4. If any statement in the application of Edmund F. Wall or any answer made by him to the medical examiner was in any respect untrue, the plaintiff cannot recover in this action. *Answer :* This point is affirmed as to all statements in the application which have been called in question by the affidavit of defense. [2]

5. If at the date of the application by Edmund F. Wall, October 15, 1892, he was not in good health, or at the date of his medical examination, November 14, 1892, there was anything. in his physical condition tending to shorten his life which was not distinctly set forth in his application or in his answers to the medical examiner, or if at the date of his examination, November 14, 1892, any of his parents, brothers, sisters, grandparents, uncles, aunts or cousins, had ever been afflicted with consumption or with pulmonary or hereditary disease, the plaintiff cannot recover. *Answer :* This point is refused, as it goes entirely beyond any defense set up in the affidavit of defense. If it be understood to be limited to the grounds of defense alleged in the affidavit, then it would have been affirmed, but it is stated much too broadly. [3]

6. Edmund F. Wall having on November 14, 1892, stated to the medical examiner in answer to the question, " When last attended by a physician? " " One year ago," if the jury find from the evidence that he was attended by Dr. L. S. Wiggins on February 3, 1892, May 2 and 12, June 15 and 22, October 1, and November 3, 1892, or at any other date within one year before November 14, 1892, the plaintiff cannot recover. *Answer :* This point is affirmed, if you find that the said Edmund F. Wall had at any time within one year previous to the time of his medical examination been attended by a physician for phthisis or lung, bronchial or pulmonary disease, the affidavit of defense having limited this branch of the defense to the allegations that

the deceased had been attended by physicians for trouble of this nature. [4]

7. Edmund F. Wall having on November 14, 1892, stated to the medical examiner in answer to the question, "Have any or either of your parents, brothers, sisters, grandparents, uncles, aunts or cousins, been afflicted with consumption, raising of blood, rheumatism, insanity, or with pulmonary, scrofulous, cancerous or any hereditary disease?" answered, "No," if the jury find from the evidence of Dr. J. B. Black that he treated Johannah Hickey, an aunt of Edmund F. Wall, for consumption in 1891, or that she died of consumption in December, 1891, or that Dr. J. B. Black treated Patrick Hickey for consumption in 1889, a son of Johannah Hickey and a cousin of Edmund F. Wall, or that he died of consumption in 1890, the plaintiff can not recover. *Answer:* This point is refused. If you find that Johannah Hickey, an aunt of Edmund F. Wall, was afflicted with consumption prior to the date of this medical examination, then the plaintiff could not recover, and it does not make any difference whether Dr. Black treated her or not; but the mere fact that he treated her for some disease which she may or may not have had, is not sufficient. In order to amount to anything, she must have had the disease. Doctors sometimes make mistakes. No mention of Patrick Hickey, a cousin of Edmund F. Wall, appears in the affidavit of defense; for that reason the point is refused. [5]

9. Under all the evidence in this case the verdict should be for the defendant. *Answer:* This point is refused. [6]

Verdict and judgment for plaintiff for $2,220. Defendant appealed.

*Errors assigned* were (1-6, 11) above instructions, quoting them; (8-10) rulings on evidence, quoting the bill of exceptions; (7) refusal to allow amendment.

*S. A. Will* and *Lev. McQuiston,* for appellant.—No principle of law will enable a party who guarantees a fact upon which a contract for insurance is based, which fact is afterwards found not to exist, to enforce the contract: Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 47; O'Hara v. Mut. Aid Soc., 134 Pa. 419; Foot v. Ætna Life Ins. Co., 61 N. Y. 571; Sullivan v. The Met.

Life Ins. Co., 36 N. Y. 38 ; Mut. Aid Soc. v. White, 100 Pa. 12; Life Asso. v. Gillespie, 110 Pa. 84 ; Archer v. Mut. Co., 6 W. N. C. 332; Blooming Grove Mut. Fire Ins. Co. v. Mc-Anerney, 102 Pa. 335.

A refusal to permit a defendant to alter his plea or defense is undoubtedly the subject of a writ of error : Kaul v. Lawrence, 73 Pa. 416 ; Trego v. Lewis, 58 Pa. 463 ; Clymer v. Thomas, 7 S. & R. 180 ; Newlin v. Palmer, 11 S. & R. 101. The true criterion is, whether the alteration in the proposed amendment is a new and different matter,—another cause of action; or whether it is the same contract or injury : Yost v. Eby, 23 Pa. 331 ; Coxe v. Tilghman, 1 Whart. 287 ; Cassell v. Cooke, 8 S. & R. 268. The proposed amendment should have been allowed because it affected the merits of the case : Smith v. Kessler, 44 Pa. 143 ; Knapp v. Hartung, 73 Pa. 290 ; Erie City Iron Works v. Barber, 118 Pa. 18 ; Ency. of Pleading and Practice, 518; Garvin v. Dawson, 13 S. & R. 246; Maus v. Maus, 5 Watts, 315 ; Crutcher v. Comm., 6 Whart. 340 ; Sweeney v. Delaney, 1 Pa. 320 ; Trego v. Lewis, 58 Pa. 463.

The statement of the plaintiff as to the cause of death of the insured was a declaration of her opinion and belief of the cause of death, and as such the defendant was entitled to rely upon it before the jury as evidence to be by it considered with the other evidence presented : Mut. Ins. Co. v. Stibbe, 46 Md. 302. Proofs of death of assured is evidence of what disease he died : Mut. Ben. Assn. v. Hoffman, 110 Ill. 603 ; Lawrence v. Mut. Life Ins. Co., 5 Bradwell, 280 ; Ins. Co. v. Newton, 22 Wallace, 32 ; Mut. Ben. Life Ins. Co. v. Higgenbotham, 95 U. S. 380. On general principles, the declarations made in proofs of loss by claimant are admissible in evidence against him, and in favor of the insurer : Cook on Benefit Societies, 217.

To constitute medical attendance, it is not necessary that a physician should attend a patient at his house ; attendance at the office of the physician is sufficient : Cushman v. U. S. Life Ins., 70 N. Y. Ct. of Appeals, 72.

It is a fair rule of interpretation that the inquiries put to the applicant for life insurance are deemed to relate " to matters which affect the general health and continuance of life : " Barteau v. Phœnix Mut. Life Ins. Co., 3 N. Y. Sup. Ct. 578.

*A. B. Reid*, with him *A. V. D. Watterson*, for appellee.—
Where the courts are able to glean from the conduct of the case
that the attempt to procure an amendment is for the purpose
of obtaining an unconscionable advantage, even if it be at-
tempted ostensibly to conform the pleadings to proofs, they
will not allow it to be done : 1 Enc. of Pl. & Pr. 584, 585.   Affi-
davits of defense do not form a part of the pleadings : Bowen
v. De Lattre, 6 Wh. 430.   The affidavit of defense not being a
part of the pleadings, then upon the principle that no amend-
ments beyond the declarations or plea are to be permitted, save
in the declaration of the court, we cite : Diehl v. Adams Co.
Mut. Ins. Co., 58 Pa. 443 ; Austin v. Ingham, 4 Yeates, 347 ;
Wager v. Chew, 15 Pa. 323.   This was not a case in which the
amendment ought to have been permitted to ascertain the merits
of the cause on trial : Grasser v. Eckart, 1 Binney, 587 ; Eber-
soll v. Krug, 5 Binney, 51 ; Ridgley v. Dobson, 3 W. & S. 118 ;
Fox v. Foster, 4 Pa. 121.   We contend under the rule, that
when the cause was upon the trial list, and especially, after the
trial had been practically concluded, the court below had the
sole control of the matter, and might permit or refuse the filing
of such supplemental affidavit in its discretion : Endlich on
Affidavits of Defense, sec. 9 ; Sullivan v. Johns, 5 Whart. 366 ;
Erwin v. Leibert, 5 W. & S. 105 ; Finlay v. Stewart, 56 Pa.
183 ; Long v. Rhoads, 126 Pa. 378 ; Glazer v. Lowrie, 8 S. &
R. 498 ; Ridgley v. Dobson, 3 W. & S. 118 ; Hartman v. Key-
stone Ins. Co., 21 Pa. 466 ; Yost v. Eby, 23 Pa. 332.

The proofs of death were inadmissible for the purpose of
establishing the fact or cause of death or for any purpose other
than to prove compliance with the requirements of the policy
as to such proofs of death : Thurston v. Murray, 3 Binn. 326 ;
Com. Ins. Co. v. Sennett, 41 Pa. 161 ; Lycoming Ins. Co. v.
Schreffler, 42 Pa. 188 ; 44 Pa. 269 ; Kittanning Ins. Co. v.
O'Neill, 110 Pa. 548 ; Peoples Mut. Accident Assn. v. Smith,
126 Pa. 317.

Exhibit 5, being statement of Dr. Lyman, and exhibit 7, state-
ment of Dr. Wiggins, were incompetent, and their admission as
evidence was properly refused by the court below : Thurston v.
Murray, 3 Binn. 326 ; Com. Ins. Co. v. Sennett, 41 Pa. 161 ;
Ins. Co. v. Higginbotham, 95 U. S. 390 ; Bacon on Ben. Soc. &
Life Ins., sec. 471 ; Cook on Life Ins., 219.   Certificates of cause

of death cannot be admitted to support the theory that deceased was afflicted with the disease of which he died at the time he applied for insurance : Continental Co. v. Young, 113 Ind. 159 ; Covenant M. B. Assn. v. Hoffman, 110 Ill. 603 ; Cook on Life Ins., 218.

OPINION BY MR. JUSTICE GREEN, January 4, 1897 :

While it is perhaps correct to say that the defendant's second and fourth points should have been affirmed without qualification, we do not feel that a reversal on the first and second assignments would be warranted. Prima facie, at least, the qualifications were correct, and they were harmless in any event, and are not sustained.

The third assignment is much more serious. The answer to the fifth point was a flat refusal, though accompanied by the statement that if the point had been limited to the grounds of defense alleged in the affidavit it would have been affirmed. According to this the refusal of the point was erroneous if the matters of fact which are embraced in the point are included in the affidavit of defense. An examination of the affidavit convinces us that the matters embraced in the point are covered by the affidavit, and that the point should have been affirmed. The affidavit contains the following averment, " That the following statement in his application was not true, viz : 'I have no habit or injury or disease which will tend to shorten my life, and am now in good health.' Said statement was untrue, false and fraudulent in this that the said Edmund Francis Wall, at the time of making the same, was afflicted with and had phthisis with lung and bronchial trouble, and which caused his death of phthisis and pulmonary disease, November 16, 1893, and for which he had been previously treated, and did shorten his life." As none of this was stated or explained in the answers to questions put to the insured at the time of his application, and as he did then declare that he was in good health, it is at once manifest that the first part of the fifth point covers the case exactly, and was entitled to an affirmative answer. The same is true of the second part of the point which asked an instruction for defendant if at the date of examination any of the parents, brothers, sisters, grandparents, uncles, aunts or cousins had ever been affected with consumption or with pulmonary or

hereditary disease. The affidavit of defense on this subject contains the following: " The said Edmund Francis Wall did make false, fraudulent and untrue answers to the following question asked him by the medical examiner at his medical examination, made November 14, 1892, as follows, the said question being, 'have any or either of your parents, brothers, sisters, grandparents, uncles, aunts or cousins been afflicted with consumption?' To which the answer of said Edmund Francis Wall was ' No,' which said answer was false, fraudulent and untrue, in this that his aunt, Johannah Hickey, died in 1890 with consumption and pulmonary trouble; also that his cousin Thomas Hickey, son of said Johannah Hickey, died in July, 1892, with tuberculosis, at the house of said Edmund Francis Wall; also that his cousin, a Miss Wall, a daughter of said Johannah Hickey, who was also living at his home at the time he made said answers, was in the last stages of consumption, and who died within several months thereafter; also that his brother William having been examined in the summer of 1892, and prior to his application, by a physician was found to have tuberculosis, was advised to go to another climate on account of his disease, and did go to either Colorado or California." A similar averment as to his brother James is in the affidavit of defense. The learned court below was therefore clearly in error in refusing the fifth point on the ground that the point went " entirely beyond any defense set up in the affidavit of defense." In consequence of this ruling the defendant was altogether deprived of a perfectly legitimate defense as to which there was abundant testimony. It was proved without contradiction that the applicant had bronchial catarrh from February to November, 1892, and was treated for it a number of times, and there was ample testimony from which a strong presumption arose that he also had pulmonary disease at the very time his application was made. The third assignment is sustained.

The fourth assignment is in the same situation as the third. The sixth point of the defendant asked for a binding instruction in its favor if the jury found that the applicant had been attended by Dr. Wiggins at certain dates named, all within a year before the application was made. The learned court answered by saying that the point was affirmed if the applicant had been attended for phthisis or lung, bronchial or pulmonary

disease within the time named, on the ground that the affidavit of defense limited this branch of the defense to the allegations that he had been attended by physicians for trouble of this nature. An examination of the affidavit shows that this was a mistake. The affidavit alleges generally and without limitation that the applicant made false answers to questions contained in the application and in answer to certain questions to the medical examiner. It does not specify the particular questions, but the allegations of the affidavit would be supported if the answers to any of the questions thus propounded were false. If therefore the point should be sustained as to lung or bronchial disease, it should also be sustained if the answers were false as to any attendance by a physician. The application contained an express covenant of warranty of the truth of all answers to all questions of the medical examiner and the financial secretary, and an express stipulation that if any of them were false all benefits under the benefit certificate or policy were forfeited. In the questions of the financial secretary was the one, " When last attended by a physician and for what cause? " And the answer was, " One year ago." The next question was, " Name and address of physician ? " And the answer was, " Dr. Wiggins, McKeesport, Pa." Nothing was said in the question about any disease, but it did require a statement in response as to what cause the applicant was attended for. Now if he was attended by a physician for any cause within the year previous to the application, the answer was false and would preclude recovery. It was also concealment to omit the cause, and additional falsehood to state that it was the particular physician named, Dr. Wiggins, who had not attended him within the year. Now in point of fact Dr. Wiggins testified that he had attended the applicant on February 3, May 3 and 12, and June 7, and October 1, 15 and 22, all in the year 1892. The application was dated October 15, 1892, and no less than six of those attendances were within the limited period, one of them being on the very day the application was signed. The disease for which all the attendance had been given was bronchial catarrh, which was of so serious a character that by the following April it had extended into the lungs, causing severe cough and spitting of blood, and resulted in death from consumption the following November. The testimony of Dr. Wiggins was

entirely uncontradicted, and it established beyond all question the falsehood of the answer in question. The effect of such an answer to such a question is fully established in the case of U. B. Mut. Soc. v. O'Hara, 120 Pa. 257. Mr. Justice PAXSON, delivering the opinion, and speaking of the inquiry, "Have you had any medical attendance within the last year prior to this date? If so, for what disease?" said, "The object of this interrogatory is manifest. If the assured had no medical attend- ance within the time prescribed, and so answers, that is an end of it. But if he had such attendance, then the company is entitled to know for what cause, and the name and address of the doctor, in order that they ascertain the particulars from him. And if the assured falsely answer that he had no medical attend- ance, he is not entitled to recover." To the same effect is O'Hara v. Mut. Aid Soc., 134 Pa. 419. In Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 47, we said, "No principle of law will enable a party who guarantees a fact upon which a contract for insurance is based, which fact is afterwards found not to exist, to enforce the contract. He agrees to answer for the truth of the fact, and cannot escape on the ground of his mistake as to its existence." In Foot v. Ætna Life Ins. Co., 61 N. Y. 571, it was said in the syllabus, "The insured represented that he had never been sick and had never been attended by a physician. It was proved by his mother, the beneficiary, that he was ailing and had been attended by a physician within a month before the policy was issued. Held a breach of the warranty which ren- dered the policy void." To the same effect is Sullivan v. The Met. Life Ins. Co., 36 N. Y. 38.

The general doctrine that in actions on policies of insurance with a warranty of the truth of the facts, the validity of the contract depends on the truth of the warranty, and that the engagement of the policy holder is absolute that the facts shall be as they are stated when his rights under the policy attach, is so very familiar, and has been so frequently declared, that a mere reference to a few of our modern decisions will suffice: Mut. Aid Soc. v. White, 100 Pa. 12; Blooming Grove Mut. Fire. Ins. Co. v. McAnerney, 102 Pa. 335; Life Assoc. v. Gillespie, 110 Pa. 84.

It needs only to be stated in passing that the answer of the applicant to a previous interrogatory, that he had been treated

three years before by Dr. Wiggins for fracture of the ribs from which he had recovered, was not of the least consequence in considering the other answers which have been discussed.

We think the seventh assignment is also sustained. We know of no reason why the proposed amendment should not have been allowed. It did not propose any change in the parties, nor any in the cause of action, nor in the form of action. It was merely an application to amend the pleadings to accord with the proof, a kind of an amendment which is as a rule always allowed. No injustice would be done thereby, on the contrary, the application was in the interest of justice. We do not regard the objection that it was not made until after the testimony was closed as of any force. The statutes of amendment expressly allow amendments to be made, "at any stage of the proceeding." The proofs had been offered and received without objection, and the record showed the testimony already in, and nothing was required but to formulate the pleadings so as to conform to the testimony. We do not regard the granting or refusing of this amendment as vital to the defense, but as it harmonizes the pleadings with the proofs it should have been allowed.

The paper marked exhibit No. 6 purported on its face to be the "official notice of death," of Edmund F. Wall, and certified that "it is not in any part filled in by, nor has any information therefor been derived, directly or indirectly, from any member of the society." It contains full statements as to the sickness, death and burial of Edmund F. Wall, the cause of the death, the place, the time, the place of interment, the names of attending physicians, and agreement that physicians may give information of all knowledge obtained in their professional capacity, and that the premier and secretary of the defendant society may ask such further questions and require such further proofs of death as they may think necessary; it purports to be signed by the plaintiff by her mark attested by two witnesses, and it contains a formal acknowledgment before a magistrate, who certifies over his signature that Ellen J. Wall was known by him to be the person who signed the statement, and that she being duly sworn by him did duly depose to the truth of the answers, assertions and allegations contained in the statement.

This paper was testified to have been found among the official papers of the defendant as part of the proofs of the death of Edmund F. Wall; it was taken by Mr. W. R. Spooner, the premier of the defendant, to the plaintiff, produced before her and her husband and discussed by them as a proof of their son's death, which had been furnished to the defendant, and told them that he was not satisfied with the proofs, and explained the reasons why he was not satisfied, and asked for additional information as to the facts set forth in the paper, and detailed long conversations had with them upon that subject. This paper being offered in evidence was objected to on the ground that it was incompetent, that it was not established by proper evidence, and that it stated facts not necessarily within the knowledge of the person making the affidavit. It certainly was relevant, and it was not offered as original proof of the facts stated. It was offered as a proof of death furnished by the plaintiff, and was of course admissible if it really came from her, and it was admissible in any event as a declaration against interest if its authenticity was sufficiently established. It was rejected by the court because it was not affirmatively proved to have been furnished by the plaintiff. But as it was produced before her by the defendant, and its contents were a subject of discussion between the plaintiff and the defendant's officer, and was not challenged, or in any manner disputed or denied by the plaintiff, it was beyond all question admissible to the jury without specific proof of execution, or of its being sent to the defendant by the plaintiff. At the very best the court could not say as matter of law that the conversation between the plaintiff and the witness Spooner did not relate to this paper. If there was any dispute on that subject it would have to be referred to the jury for solution. The witness was asked, " Q. I asked you what these papers are? A. These papers that are marked exhibits 5, 6 and 7 are the proofs of death furnished upon the death of Edmund F. Wall. Q. By whom furnished? A. No. 5 was furnished or obtained, in so far as the doctor's statement is concerned, by Mrs. Wall, and given to the assembly committee, the other portions of it I believe were completed by the assembly committee, as I understand the fact to be. No. 6 was furnished by the beneficiary herself, and No. 7 was forwarded to the supreme office by Dr. Wiggins, upon the inquiry

made of him when the beneficiary's statement showed that he
was one of the attending physicians in the last illness." Upon
cross-examination the witness said, referring to exhibits Nos. 5, 6
and 7, " They were official papers upon the files of the supreme
secretary's office that came to me in the regular course of busi-
ness, and upon my inquiry subsequently of Mrs. Wall and others,
I found they were the papers, and verified their genuineness
from the parties here." Being asked whether she read the
papers when he showed them to her he answered, " She did
not. I read to her the portions to which I referred in my testi-
mony." He said further that, " They (the papers) were sub-
mitted to her and her husband, and he examined them. Q. You
undertook to inform them as to the contents did you? A. I
informed them as to these particular features in the statements
of the two doctors which gave to me doubt, and upon which I
told them that I would have to reject the claim unless those
facts could be controverted. Q. What statements if any did
you make to Mrs. Wall relative to these papers? A. I told
her and her husband that those were the proofs of death fur-
nished, and so far as the paper signed by her is concerned, it
was recognized on the subsequent conversation made and the
statement of the doctor from Denver, and there was no denial
upon the part of either. They seemed to recognize both of these
papers. The other paper, that of Dr. Wiggins, they had not
seen before, and I read to them if I remember right, that full
paper because it is a short one." There was very much more
testimony as to the matters contained in the several exhibits,
the whole of which proceeded upon the assumption that the
papers were what they purported to be, and not the least ques-
tion as to their authenticity. It is perfectly manifest that the
acts, conduct, declarations and answers of the plaintiff to the
questions put to her in respect to these papers constitute a mass
of convincing testimony that all these papers were received,
discussed, considered and acted upon by both the plaintiff and
witness as genuine in all respects, and they were therefore all
of them admissible in evidence as such. Being treated as such
by both parties no specific proof of actual execution was
required. The eighth, ninth and tenth assignments are there-
fore sustained. The eleventh assignment is sustained because
the portion of the charge covered by this assignment limits all

right to make defense to the presence of, or treatment for, lung or pulmonary disease, at the time of the application, or within one year prior to that time.

Judgment reversed and new venire awarded.