186   629
186   530
186   629
196   320

186      629
p 20 SC ¹ 71
e 20 SC ¹524

186      629
e206     ¹453

186      629
24 SC ¹290

# William H. March v. The Metropolitan Life Insurance Company, Appellant.

*Insurance—Life insurance—Misrepresentations in application—Act of June 23, 1885.*

Under the Act of June 23, 1885, P. L. 134, a misrepresentation or untrue statement in an application for insurance, if made in good faith, does not avoid the policy unless it relates to some matter material to the risk. Where the materiality of a statement to the risk involved is itself of a doubtful character its determination should be submitted to the jury.

Questions in an application for life insurance relating to insurance in other companies, to the rejection of the applicant by other companies and to the attendance by physicians are all material to the risk, and it is error to submit the question of their materiality to the jury. The act of June 23, 1885, has nothing to do with such questions.

An applicant for life insurance was asked the question: "Have you ever spit blood?" To this he answered "No," without any qualification. The evidence showed that he had had an expectoration of blood which was so great as to amount to a hemorrhage. *Held*, that the question was falsely answered and that the jury should have been so instructed.

In an action upon a policy of life insurance, it appeared that the application for the policy contained certain questions and answers as to health. The company presented a point to the effect that the concealment of a serious ailment by the applicant was a fraud upon the company's rights. The court affirmed the point with the qualifying remark, "If those questions were asked." *Held*, that the company was entitled to an unqualified affirmance of the point, as the added remark only tended to confuse the jury.

In an action upon a policy of life insurance where it appeared that the insured in his application concealed the fact that he had consumption, the company is entitled to an unqualified affirmance of a point to the effect that if the insured had consumption at the time of the delivery of the policy, the company is entitled to a verdict. As the insured could not be ignorant of the presence of the disease, and as the question is material and the answer a warranty, the court should not include in the answer to the point the element of knowledge and the intentional concealment by the assured.

In an application for a policy of life insurance on a wife, a question was: "Are you now insured?" The answer was, "No." The application was signed by both husband and wife, and the policy was payable to the husband. The husband acknowledged that the answer was false; that he had already taken out another policy on his wife's life, and that he had paid all premiums on it. *Held*, that the husband was not entitled to recover, even though the wife was without knowledge of the first insurance.

In an action on a policy of life insurance, where it appears that the insured in her application had stated that she had no serious ailments; that

she had not been attended by a physician, and that she had not been rejected by any other company, and the uncontradicted evidence shows that these answers were absolutely false, it is the duty of the trial court to direct a verdict in favor of the insurance company.

Argued Feb. 11, 1898. Appeal, No. 19, Jan. T., 1898, by defendant, from judgment of C. P. Delaware Co., Dec. T., 1897, No. 47, on verdict for plaintiff. Before GREEN, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of life insurance. Before CLAY-TON, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged as follows:

This is an action on a policy of insurance upon the life of the wife of the plaintiff. [It is sufficiently proved that she is dead, and, if there has been no false representations made which are material to the risk, the plaintiff is entitled to recover.] [1] There is a distinction between a mere representation, made for the purpose of securing a policy, and a warranty. A representation in the law of insurance is an incidental statement made by the insured with regard to some feature of the risk upon the faith of which the contract is entered into. It is no part of the contract, and need not be literally, though it must be substantially true. It differs from a warranty in that to avoid the policy in case of its falsity it must be a fact material to the risk and must be either wilfully false or grossly negligent in character. If there is a misstatement made, if there is a representation made that is really untrue, yet, if it was made in good faith it does not void the policy, although it may be material to the risk, unless the representation is so grossly negligent that the jury, or, under the evidence, the court would hold that the insured ought to have known the truth of his statement. Now, as I understand this policy by its terms, it makes all the representations warranties. The policy states that it is agreed, that it is hereby declared agreed to be a warranty, or by the undersigned that the answers and statements contained in the foregoing application, and those made to the medical examiner as regard any of the parts A and B of this sheet, together with this declaration, shall be the basis, and taken to be a part of

the contract of insurance with the Metropolitan Life Insurance Company, and that they are full and true, and are accordingly regarded, and that no information or statement not contained in this application received or acquired at any time by another person shall be binding upon the company or shall modify or alter the declaration and warranties made in this application. That is what is called a warranty. . . .

If it is a warranty it makes no difference whether it is true or false, it is warranted to be true and, although the party making it believes it to be true, if it is false, it makes no difference, the warranty avoids the policy if it is false, whether material or not. Now the effect of that law was so unjust that our legislature changed it, and they have materially altered the common law as to the effect of a warranty in a policy of insurance. By the Act of Assembly of June 23, 1885, P. L. 134, it is declared " whenever an application for policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such applications made in good faith by the applicant, shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk." Without that act of assembly they would have worked a forfeiture whether they were known to be true or not true. By this act of assembly these warranties will not avoid the policy unless the false statement or misrepresentation, if made in good faith, is material to the risk; and that is the only difference between the common-law warranty in a policy of insurance and the warranty as it is now and as it exists under our act of assembly. I therefore charge you, gentlemen of the jury, that every question contained in this application and answered by the insured, if the answer was made in good faith, whether it was true or not, will not work a forfeiture of this policy of insurance unless the statement is made upon some subject which is material to the risk, and if it is, then it will have the effect of avoiding the policy. [This policy also declares that no suit shall be brought in any court except in the courts of New York. I charge you, gentlemen, that this being a foreign insurance company, it has no right to do any business in the state of Pennsylvania, under a heavy penalty,

without first complying with an act of assembly which requires it not only to designate a person who shall be authorized to receive the service of process for it, but it is also required to file an agreement that process may be served anywhere in this state upon that agent, and that that is a waiver upon the part of the company of its right to insist upon this suit being brought in New York.] [7]

· [Now having brushed away those technicalities, we will come down to the real issue in the case, and there is but one real issue contained in it; that is, if any false representation or warranty has been made, were they material to the risk? That is the question, as I understand it, although I announce this with some doubt, because my first impression was that the materiality, where the facts are undisputed, would be for the court, but as I understand the decision of the Supreme Court, as read by the counsel in the case, the question of materiality is for the jury. Of course you will not find against the evidence, if that is all one way, and where you are satisfied from the evidence that the fact stated was material, that is to say, that if that representation had not been made this policy would not have been issued; if you find there were false representations made and they were material to the risk, then under the act of assembly I am bound to charge you that whether the insured knew it or not, if they were material, they are warranties and she is bound by them, and if they are false and material there can be no recovery. The great question, therefore, for the jury to consider is the materiality of these statements.] [2] [Now, it is held by the counsel for the defendant, that the first material question asked the insured, and which was answered in a negative was, "Are you insured in any other company?" And the representation, as it is written in answer to that question is, "no." The defendant alleges that that was a material misrepresentation, and it will be for you to say whether it was, and you will decide whether it was, under all the surrounding circumstances. It might be material in one sense and it might be immaterial in another. If the company, when they asked that question, received the answer, "yes," it might have induced them, if the insurance was not completed, to believe that the person had already been examined, and then it was a good risk. Now they want the information for some reason, and if the answer had

been "yes" instead of "no," it may be that it would have been favorable to the insured, that is to say, they might reasonably suppose if the applicant had passed an examination in some other company that it could not hurt them. If some other company had to pay the premium, and if the other had passed her, then we may. But that is only one view of it. Another view of it might be that if she had said "no," they might then say, " well, we must be more particular in regard to this applicant and we must make a closer examination." I say that may be. It may be that if she said "yes," and gave the name of the company, though I believe, that in giving the answer to that question the name of the company is not required, they might go to the company and make some inquiries relative to it, or if that was answered "yes" it might be followed before they issued the policy by the inquiry "what other company did you insure in, how much was the policy, and are you over insured." So, under the surrounding circumstances of the case it will be for you to say whether it is material to the risk, that is to say, whether that answer had anything to do with inducing these people to give her a policy of insurance. So much for that. I will leave that, therefore, to you to say whether that was a material representation, because there is a great number of questions which are asked here, and I suppose they take it for granted that they were all material, but it will be for the jury to say whether they are or not, under all the circumstances of the case.] [3] Now as to the second question, which was, " Are you now insured?" Then comes the question, " If so, in what company or association?" And then, "For what amount?" "How much has been granted during the past year; enumerate each, and if insured in this company state the policy and number?" Now then the answer to that is "None." It seems, however, that she had an insurance in two other companies, but the allegation is that they were not valid because they were not made by her, and that she did not know they were made. It appears that they were made by her husband, and the allegation is that in this insurance no medical examination was required; on the other hand, it is alleged that a medical examination was required in one. You have the evidence, and the whole thing will be for you, for if she was over-insured, that might be a reason to decline to insure her, because, if there

was an over-insurance, there would be an interest for the benefi-
ciary in terminating the life of the insured, and it makes the
risk greater if there is an enormous insurance ; it might indicate
that there was danger that the insured might be permitted to
die for the purpose of the beneficiary securing the policy, and
insurance companies are very properly cautious about insuring
persons who are over-insured; insured to an unreasonable
amount.   You are to consider all these questions, and pass
upon the materiality of that answer.   Then as to the next ques-
tion.   That question is, ["Have you made applications and
been rejected, or has any insurance company, etc., declined
orally or in writing to insure you?"   And to that question she
has answered, "No."   Well, now, according to her husband's
testimony, she did not know that he had taken out these poli-
cies ; they seemed to be not very large, upon her life, and if
that answer was material to the risk, and was false, the policy
is forfeited, but I take it it is for the jury under all of the cir-
cumstances to say whether it was material.] [4]   Now, we
come down to the question of her complaints.   The question
was asked, "Have you had consumption?" and she says "no."
Now under all the evidence it may be doubted whether the
woman ever had consumption as meant by the word here used,
and I charge you that this word means consumption in the
ordinary and proper sense of the word, and not according to its
technical meaning, or as doctors would use it.   As it is used
here, it means consumption of the lungs, a disease which is
known to everybody as being a disease of the lungs, by which
they gradually decay, and the person eventually dies from loss
of tissue caused by the failure of circulation in the lungs, or by
the tubercules becoming decayed and falling in, causing cavities
in the lungs.   I charge you that it relates to pulmonary con-
sumption and not consumption of the bowels, kidneys, or any
other part of the system.   She answered "no" to this question,
and it will be for you to say whether the answer was true or false.
You have heard the testimony of the doctors who have been
called in this case.   The doctor who examined her for this very
policy said she had no signs of consumption, and I take it for
granted that you will take his evidence as being of more weight
than that of those who examined her before or afterward.   He
says that everything he did was done properly, and that he

examined her, although he has no particular recollection of the
case, but that whatever he said in his record is true, and he
says she was in good health.   Even Dr. Cohen does not say
that she had consumption, but that she had threatened con-
sumption, and he said that her condition was doubtful, that she
might get well or run into consumption, and it is for you to say
whether that is a false representation.   You will, of course,
consider what Mr. Starr and all the other witnesses say upon
the subject.   It is for you to weigh the testimony.   Dr. Starr
says he told her that she had consumption.   He says he was
not examining her as a physician, but that he was examining
her as the medical agent for the company in which insurance
was asked to be taken, and it may be that he thought she had,
and yet it may be that she had not, because it appears that
when she died, so far as the evidence goes, she died from
meningitis, and that she had sound lungs.   The testimony of
the physician who attended her was that she died from menin-
gitis superinduced by a running down of the system, and per-
haps she had consumption or decay of the bowels ; that may be,
but there is no question in regard to that disease among the
many questions here asked.   It will be for you to say therefore
whether that was a false representation or not.   [Then we
come to the question, " Have you ever spit blood."   To which
she answered " no."   Now the evidence seems to be that she
said that in her younger days she had had hemorrhages, and I
charge you, this is to be strictly construed against the com-
pany.   And if they wanted to know whether she had hemor-
rhages they ought to have asked her that question, and not
whether she spit blood.   It is not necessary, implying that
spitting blood is a hemorrhage.   A hemorrhage is a rupture
of a vessel full of blood, and spitting blood may be applied to
colored mucus coming from the lungs or throat and indicates
consumption, while hemorrhages do not always indicate con-
sumption, but the spitting of blood referred to here does ; that
is, where the mucus is soiled with blood, then it indicates a
diseased condition of the lungs, and that the mucus is coming
from the lungs, and it indicates consumption.   You must con-
sider all these things and say whether that was a false repre-
sentation or not, but it seems to me, it would be material.]   [8]
[The fifth, which is to my mind the most serious of them all

is, "Give full particulars of any illness you may have had since your childhood." Now that is a sweeping question. "And name the medical attendance or attendant?" Now that is certainly a sweeping question; to a certain extent it is an unreasonable question to ask a person who is twenty-six years old to state everything she has had and every medical attendant, is asking a great deal. The one that asks these questions I suppose took the answers. I do not know. In whose hand-writing are these written? Are they in Dr. Johnson's?

Mr. Schaffer: It so appears, yes, sir.

The Court: She answered, and whatever her answer was, he wrote it down. "Have had but slight ailments, not needing a physician." That was her answer. Now it appears, as a matter of fact, that she had serious ailment; that she had been in the hospital; that she was threatened with consumption, and she had been, according to most of the testimony, in a delicate condition for a good while. It does not appear that she had many physicians; she may not have considered Dr. Cohen as her physician, but he was. He was the hospital physician, and she was there; and if you find that this was material to the risk, and it seems to me that this answer was, then, if it was false, this policy is void and there can be no recovery. Now, you will consider all the evidence upon that. You will consider the questions put by Dr. Johnson. It is hardly to be supposed that he would just ask the questions, and put down an answer; but the supposition is that the examining physician not only asks the questions, but that he would try to have her understand and give intelligent answers. Now, here is the answer in writing, she has signed it, and she has made that warranty, and if it is material, it appears not to have been truly answered, and if it is material to this risk, it is a forfeiture rendering the policy void and there can be no recovery. It is my duty to say that to you as the law, whatever sympathy you may have had for the woman or for her husband, this, according to law, gentlemen, and you must find your verdict according to the evidence as it is delivered to you from the witness box, and you are not to decide these questions according to your sympathy. If you find that that was a material representation, and that it was false, I charge you there can be no recovery.] [5]

[Now the sixth is: "Name your usual medical attendants."

Now, that seems to me might be got over, because I take it that
that applies or might have been understood by her as applying
to the medical attendance at that time.   For she is asked what
medical attendance she had before, and she tells who her family
physician is, the name and residence " of your usual medical at-
tendants." She says it was Dr. Stoever; that appears to be true.
The seventh question is, " When and for what have his services
been required? " And the answer is, " In confinement." That
seems to be true.   That was all he was attending her for.
" Have you consulted any other physician, and if so, when and
for what? "   Now, I would take that as applying to the present
time, that is while Dr. Stoever has been their family physician.
" Have you consulted any other? " If you see fit to give it that
construction you can do so, but you have no outside evidence
upon that subject, and at that time she does not appear to have
had any other physician.   Dr. Ulrich attended her at another
time. but it was before that.   He was called in to attend her
while she was having some trouble, and he cured it.   He says
that there was displacement of the uterus, what we commonly
call falling of the womb, and that she recovered from that and
had children afterwards, and it seems to me that it is a question
of materiality for you.   You may, perhaps—well, I will permit
you to pass upon that question without giving any opinion upon
it.   To my mind the most serious question in the case is the
one in which she says she has never had any but slight ailments
and not needing a physician.   If you find that that is material
to the risk, then it voids the policy.] [6]

Defendant's points and the answers thereto were as follows:

1. Under all the evidence the verdict must be for the defend-
ant.   *Answer:* I decline to so charge you. [9]

2. If at the time of the delivery of the policy in the suit the
decedent, Mary H. March, was not in sound health, by which
it is meant that she was suffering from or afflicted with any
ailment which naturally tends to shorten life, and frequently
terminates fatally, and that fact was not communicated to the
company defendant, then it was a fraud upon their rights, and
the verdict should be for the defendant.   *Answer:* If those
questions were asked they were material, and if she answered
them falsely, the verdict should be for the defendant.   That is
my answer. [10]

3. If at the time of the delivery of the policy now in suit the decedent, Mary H. March, was suffering from any ailment which affected the system seriously, and was the foundation of a grave, important or weighty trouble, then the verdict should be for the defendant. *Answer :* If these questions were asked and she answered them falsely, I hold that they were material, and affirm the point. [11]

4. If at the time of the delivery of the policy in suit the decedent, Mary H. March, was suffering from an ailment, which if known to the defendant would have caused the rejection of the risk or the exaction of a higher rate of premium, then the failure to communicate it to the company was a fraud upon the company, it is not bound, and the verdict should be for the defendant. *Answer :* If she knew there was such an ailment, and the question was asked and she concealed it, this point is affirmed. [12]

5. If at the time of the delivery of the policy in suit the decedent, Mary H. March, was suffering from phthisis pulmonalis, tuberculosis or consumption, which afterward contributed to her death, then she was not, at the time of the delivery of the policy in suit, in sound health as required by the provisions thereof, and your verdict should be for the defendant. *Answer :* If you find she had any of these diseases (the evidence is for you), and if she knew it and concealed it when she was asked to reveal it, this point is affirmed. These questions would be material to the risk. [13]

6. As the application for the policy in suit states that Mary H. March, the deceased, was not then insured in any other company or companies, and the proofs of death and the uncontradicted evidence showed that she was so insured in other companies, then there can be no recovery, and the verdict should be for the defendant. *Answer :* Affirmed; but if you believe gentlemen that the policy was taken out by her husband without her knowledge, and that she did not sign the application, then I decline to affirm that point. [14]

7. If Mary H. March, the deceased, spat blood, or had an habitual cough, or if she had a physician attending her for lung trouble before the application for the policy in suit was made, then there can be no recovery, and the verdict should be for the defendant. *Answer :* I say to you, gentlemen, that if she had

those troubles, they were material to the risk, and if she made false representations on that subject, the policy is void and the verdict should be for the defendant.  An habitual cough does not mean a cough contracted from a cold.  It does not mean a cough which comes on at times, it means a cough that is the normal condition of the patient, a cough that is chronic, a cough that has become a habit.  It does not mean a cough that a person has when he has a cold, but an habitual cough is what is referred to.  The evidence on that subject will be for you. [15]

8. If Mary H. March, the deceased, prior to the date of the policy in suit, had been attended by a physician for a serious disease which materially tends to shorten life, or which contributed to her death, there can be no recovery, and the verdict should be for the defendant.  *Answer :* If the facts set forth in this point are true, and she was asked upon that subject, and she knew or ought to have known it, and answered falsely, it was material to the issue, and as it was material to the question, the point is affirmed.  I do not hold, gentlemen, that a person who has some secret disease, not known to himself, and that could only be ascertained when he was dead and dissected, that for him to state he had no such disease, would be such a false representation as would void the policy and there could be no recovery from it.  It would be a disease he had and ought to know that he had from the nature of the disease, from the surrounding circumstances.  That is what I mean by saying, if she knew, or if she ought to have known, it is the same thing as if she knew. [16]

Verdict and judgment for plaintiff for $1,087.  Defendant appealed.

*Errors assigned* were (1–16) above instructions, quoting them.

*W. Roger Fronefield*, for appellant.—The Act of June 23, 1885, P. L. 134, does not change all warranties into mere representations : Hermany v. Life Assn., 151 Pa. 17 ; Wall v. Royal Society, 179 Pa. 355 ; Life Assn. v. Gillespie, 110 Pa. 88 ; Carson v. Ins. Co., 1 Pa. Superior Ct. 572.

The answers as to health were material : Hartman v. Ins. Co., 21 Pa. 477 ; Aid Society v. O'Hara, 120 Pa. 265 ; Swank v. Phillips, 113 Pa. 489 ; Ins. Co. v. Huntzinger, 98 Pa. 47.

Contradictory language in the charge is ground for reversal: Pister v. Benefit Assn., 3 Pa. Superior Ct. 50.

The applicants necessarily knew the insured had recently been attended by a physician, and answered the questions in bad faith: Mengel v. Ins. Co., 176 Pa. 280.

When the insured signed the application, she agreed to answer for the truth of her statements, and cannot escape on the ground of want of knowledge: Ins. Co. v. Huntzinger, 98 Pa. 47; Ins. Co. v. McAnerney, 102 Pa. 335; Aid Society v. White, 100 Pa. 12.

The learned trial judge seemed to confuse the condition in the policy with the questions made warranties in the application, and said, in answer to all these points, "if those questions were asked and answered falsely, there can be no recovery." It was not contended that any questions, to which these points were directed, were asked the insured and the plaintiff, but it is insisted by the appellant that the points should have been affirmed, because the policy was issued upon condition that the insured was at that time in sound health: Dietz v. Ins. Co., 168 Pa. 508; Schwartz v. Ins. Co., 5 Pa. Superior Ct. 285; McGraw v. Ins. Co., 5 Pa. Superior Ct. 488; Ins. Co. v. Dempsey, 19 Atl. Rep. 642; Bliss on Ins. 147; May on Ins. 596; Biddle on Ins. 73; Tyrone Mining and Mfg. Co. v. Cross, 128 Pa. 636; Sommer v. Gilmore, 160 Pa. 129.

The court should have given binding instructions for the defendant: Eister v. Paul, 54 Pa. 196; Angier v. Eaton, 98 Pa. 599.

*William I. Schaffer*, for appellee.— The contention of the defendant is virtually for the re-establishment of the old doctrine of literal warranties in life insurance, with its attendant result of a forfeiture of the policy, if the questions answered in the application are not absolutely true.

The questions of materiality and good faith are ordinarily questions of fact, and therefore for the jury. They were certainly so in this case: Moulor v. Ins. Co., 101 U. S. 708; Dietz v. Ins. Co., 168 Pa. 504; Biddle on Ins. 537; Horn v. Amicable Mut. L. Ins. Co., 64 Barb. 81; Cumberland Valley Mut. Protection Co. v. Mitchell, 48 Pa. 374; McGraw v. Ins. Co., 5 Pa. Superior Ct. 488; Yore v. Booth, 110 Cal. 238; Germania Ins.

Co. v. Rudwig, 80 Ky. 223 ; Equitable Life Assn. Soc. v. Patterson (C. Ct. Mass. 10), Ins. Law Jour. 384 ; May on Ins. par. 296.

The disease is the important question, not the presence of a doctor, and where doctors differ as to whether there was any serious disease or as to what the disease was then the question is for the jury. This certainly is the rule laid down in Hermany v. Life Assn., 151 Pa. 17 and Schwartz v. Metropolitan Life Ins. Co., 5 Pa. Superior Ct. 285, and which distinguishes the present case from Mengel v. Ins. Co., 176 Pa. 280.

OPINION BY MR. JUSTICE GREEN, July 21, 1898:

The several assignments of error in this case raise practically the same question. That question arises upon the reading of the Act of June 23, 1885, P. L. 134. The first section provides : " Whenever the application for a policy of life insurance contains a clause of warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application made in good faith by the applicant shall effect a forfeiture or be a ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application, unless such misrepresentation or untrue statement relate to some matter material to the risk." The meaning of this language is perfectly plain. A misrepresentation or untrue statement in an application, if made in good faith, shall not avoid the policy unless it relate to some matter material to the risk. If it does relate to such matter the act is inapplicable. If the matter is not material to the risk, and the statement is made in good faith, although it is untrue it shall not avoid the policy. As we said in Hermany v. Fidelity Mutual Life Association, 151 Pa. 17, this act has effected a change in life insurance contracts, and a very wise and wholesome change it is. It provides against the effect which formerly attached to warranties as to many frivolous and unimportant matters contained in the questions and answers set forth in the applications, which often were of no consequence as to the risk involved, but which the courts were obliged to uphold simply because they were warranties. This class of merely technical objections to recovery is now swept away. Ordinarily questions of good faith and materiality are for the jury, and where the materiality of a statement to the risk involved, is itself of a doubtful character,

its determination should be submitted to the jury. But it was never intended by the act of 1885, nor did that act assume, to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false in fact. Neither the Hermany case nor any other case, before or since, has made any change in the law in this class of cases. On the trial of the case now before us the learned trial judge, who seemed to be at some loss in his views of the act of 1885, gave instructions to the jury which appear to be somewhat inconsistent. After stating the distinction between representations and warranties, and adding that if any false representations or warranties were made, they were material to the risk, he said : " That is the question as I understand it, although I announce this with some doubt, because my first impression was that the materiality where the facts are undisputed would be for the court, but as I understand the decision of the Supreme Court, as read by the counsel in the case, the question of materiality is for the jury." He then presented various subjects to the jury arising upon the questions and answers contained in the application. As to some of them he left the question of materiality to the jury, while as to others he ruled that they were material, and that false answers to them would vitiate the policy. The first one of these questions which were submitted to the jury as to their materiality, was the following : " Are you insured in any other company ? " The court charged that whether this was material must be decided by the jury, and argued to the jury that it might be material in one sense, but in another sense it might be immaterial. Another question was as stated by the court : " Have you made application and been rejected or has any insurance company, etc., declined orally or in writing to insure you, and to that question she has answered, ' No.' . . . . I take it it is for the jury to say whether it was material." Another question was, " Give full particulars of any illness you may have had since childhood." The answer was, " Have had but slight ailments not needing a physician." The court said : " That was her answer. Now it appears as a matter of fact that she had serious ailments, that she had been in a hospital, that she was threatened with consumption, and that she had been according to most of the testimony in a delicate condition for a good while. . . . Now here

is the answer in writing, she has signed it and she has made that warranty, and if it is material, it appears not to have been truly answered, and if it is material to this risk, it is a forfeiture rendering the policy void, and there can be no recovery. . . . If you find that was a material representation and that it was false, I charge you there can be no recovery." As to the questions which were asked and answered in relation to spitting blood, unsound in health at the delivery of the policy, consumption, serious ailment at the delivery of the policy, the court held they were material, and if falsely answered the policy was avoided.

In respect to the first class of questions above enumerated in which the materiality of them was submitted to the jury, we are clearly of opinion that they were all material and that the jury should have been so instructed. The act of 1885 has nothing to do with this question. If these were material questions before that act was passed they are material still, and must be so pronounced by the court without reference to the jury.

A strong case illustrating the materiality of this class of questions is U. B. Mutual Aid Society v. O'Hara, 120 Pa. 256. In the opinion delivered by Paxson, J., it is said: "The eighth interrogatory in the application is: 'Have you had any medical attendance within the last year prior to this date? If so for what disease. Give name and address of the doctor in full.' The object of this inquiry is manifest. If the assured had no medical attendance within the time prescribed, and so answers, that is the end of it. But if he had such attendance, then the company is entitled to know for what cause he had medical advice or aid, and the name and address of the doctor, in order that they may ascertain the particulars from him. And if the assured falsely answer that he had no medical attendance he is not entitled to recover." This case was decided in 1888, three years after the passage of the act of 1885. In Mengel v. Ins. Co., 176 Pa. 280, decided in 1896, one of the questions was, "Have you always been temperate?" and the answer was, "Yes." We held there could be no recovery because the incontrovertible proof was that the insured had been very frequently drunk, and at least six times during the preceding five years had required the services of a physician from that cause.

He died in four months after the policy was issued, of delirium tremens, resulting from intemperance. Another point was, " The insured having in his application, in answer to question twenty-three, ' How long since you have consulted any physician? For what disease? Give name and residence,' answered, ' About one year, for light influenza, Dr. James W. Keiser, Reading, Pa.,' and the plaintiff having, in the proof of death by the affidavit of Dr. James W. Keiser, shown that during the five years preceding applicant's death, he attended said applicant for vomiting and nausea, the effects of overdrinking, the duration being from 12 to 36 hours, and it being the uncontradicted evidence of said James W. Keiser, that he had attended the said applicant within four months prior to the application and prescribed for vomiting and nausea induced by drunkenness, there can be no recovery in this case and the verdict must be for the defendant," and the facts being substantially undisputed, the learned judge reserved the point, but subsequently entered judgment on the verdict. Without going into other matters assigned for error, the facts admitted in this point show such a breach of a material warranty as to require the court to pass upon it as a matter of law." The judgment was reversed and judgment entered for the defendant on the point reserved.

In United Brethren Mut. Aid Society v. White, 100 Pa. 12, this Court, GORDON, J., said : " In the application appear among others the following questions and answers : ' What is your age and occupation? *Answer :* Sixty-two years and four months. —Occupation ; laborer. A. Are you married? B. Give name of consort. *Answer :* A.—— B. Widower.' These questions are very plain and simple, and such as any one capable of entering into a contract might readily comprehend. They were also material, not only in themselves but by the terms of the agreement, and the insurer had a right to expect straightforward and truthful answers and so the court should have instructed the jury." We held that the questions as to both occupation and marriage were material and that the court should have so instructed the jury, and should have left nothing to them except the truth or falsity of the answer. In both the cases, Com. Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 41, and Blooming Grove Mut. Fire Ins. Co. v. McAnerney, 102 Pa. 335, the questions were as to the amount of other insurance,

which it was claimed were falsely answered, and the decisions were chiefly put upon the ground that the answers were warranties, but the materiality of the questions was assumed in both. In Wall v. Royal Soc. of Good Fellows, 179 Pa. 355, the questions and answers related to the health of the insured and the attendance of a physician. The judgment was reversed on the ground substantially that it was competent to the defendant company to prove the falsity of the answers without regard to the question whether they were warranties or only misrepresentations. Upon the foregoing views we sustain the second, third, fourth, fifth and sixth assignments of error.

We do not think that all the comments of the court covered by the eighth assignment are correct. They relate to the question as to the spitting of blood, the answer to which was "No," without any qualification. The learned court made a distinction between hemorrhages and other expectoration of blood, which was not called for by the question and answer. It was conceded in the charge that the question was material, and if falsely answered there could be no recovery. We do not think that an expectoration of blood which was so great as to amount to a hemorrhage could be properly excluded from the meaning and operation of the general question, "Have you ever spit blood?" We therefore sustain the eighth assignment. The answer to the defendant's second point should have been a categorical affirmance, and not an affirmance qualified by the remark, "If those questions were asked." Upon that subject there was no doubt whatever because the questions and answers were a part of the application and necessarily were asked and were answered. It could only tend to confuse the jury to raise a question on that subject. The tenth assignment is therefore sustained. The same comment applies to the eleventh assignment and it is sustained for the same reason.

We are not prepared to sustain the twelfth assignment, as the deceased might have been afflicted with an entirely occult ailment altogether unknown to her, and in that event her failure to communicate it to the defendant would not be a fraud upon the company.

In the answer to the defendant's fifth point, we think it was error to include the element of knowledge and intentional concealment of the assured, as essential to sustain the obligation to

make a true answer to the question. The question was as to the most fatal of all diseases, of the presence of which she could not be ignorant, and as the question was most material, and the answer was a warranty, the act of 1885 is not applicable. If the fact was as stated in the point the defendant was entitled to an unqualified affirmance. We therefore sustain the thirteenth assignment.

In the application for this policy the question was asked: " Q. Are you now insured? A. No." The application was signed by the plaintiff in this action as well as by his wife, and it was an absolutely false answer, and the plaintiff admitted on the witness stand that he knew she was insured by other policies. Yet the court, in answer to the defendant's sixth point, said the point was affirmed, but if the jury believed that the policy was taken out by the husband without his wife's knowledge, and that she did not sign the application, the point was not affirmed. On the trial the plaintiff swore that he took out the policy, that he signed his wife's name and his own to the application, that he paid all the premiums and that he knew at the time that there was other insurance on her life. This man is now seeking to recover on the policy for himself. The insurance money by the terms of the policy was to be paid to him if living after his wife's death, so that he, and he alone, is the person claiming to recover on the policy, and yet in answer to the defendant's sixth point, the learned court below charged the jury that it refused to affirm the point if the policy was taken out by the husband without the knowledge of the wife, and if she did not sign the application. We are entirely unable to see what the wife's knowledge on this subject had to do with the case. The answer was false, it was made by the plaintiff, it was material beyond all question, and the court so held, and it most assuredly barred a recovery. We sustain the fourteenth assignment. In Com., etc., Ins. Co. v. Huntzinger, 98 Pa. 41, we held that an untrue answer as to the amount of other insurance prevented a recovery.

We think the seventh point of the defendant was answered with substantial correctness and therefore do not sustain the fifteenth assignment.

While there was considerable contradictory testimony as to some of the matters involved in this controversy, there are some

as to which there was none. The third and fourteenth assignments are sustained upon undisputed testimony, principally that of the plaintiff himself and they are fatal to any recovery. The same is true of the fifth and sixteenth assignments. There was undisputed testimony that the insured did have most serious ailments prior to the application, that she was attended by several different physicians during the two or three years prior to the date of the policy, and almost up to the time the policy was issued, that she was at least threatened with consumption, and that she was not in sound health at the time of the application. Her husband, the plaintiff, testified that she was under treatment at the hospital for six or eight weeks in the latter part of 1892 and early part of 1893, and that she made use of an inhaling apparatus after her return, in the use of which he assisted her. During this time she was attended by Dr. Cohen, a distinguished specialist in throat and lung diseases, and this also is admitted by the plaintiff, proved by the testimony of Dr. Cohen and denied by nobody. On all these subjects the testimony is entirely undisputed, and the ailments for which she was treated were of the most serious and vital character. The answers upon these subjects were undoubtedly false and we are therefore obliged to hold that the ninth assignment should be sustained and that a verdict should have been directed for the defendant as requested in the defendant's first point. It was distinctly proved by the testimony of Dr. Starr and not at all contradicted that he had rejected her application for insurance in another company and that both she and Dr. Starr signed the certificate that she had been examined and that Dr. Starr advised the company not to accept the risk because " by her own admissions she had been under treatment for lung disease for a year." This examination and certificate were made on January 31, 1894, and the policy in suit was made on June 28, 1894. Her husband, the plaintiff, admitted on the witness stand that he knew she had been rejected by an insurance company of Newark. As the answer to a part of the fifth clause of the application, which inquired if any other association had ever declined to insure her was "No," it was thus established by undisputed testimony that the answer was absolutely false, and the question was most material.

Judgment reversed and judgment is now entered in favor of the defendant with costs.