# Proctor *v.* Metropolitan Life Insurance Company, Appellant.

*Insurance—Life insurance—Statement as to health—Question for jury— Act of June 23, 1885, P. L.* 134.

Under the Act of June 23, 1885, P. L. 134, a misrepresentation or untrue statement in the application, if made in good faith, does not avoid the policy unless it relate to some matter material to the risk. Ordinarily questions of good faith and materiality are for the jury, and when the materiality of a statement to the risk involved is of itself of a doubtful character, its determination should be submitted to the jury; but it was never intended by the act of 1885, nor did that act assume to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false.

Where a woman in answer to a question in an application for life insurance states that she never "had cancer or any tumor," and the defense is set up in an action upon the policy, that at the time of the application she was suffering from an intro-uterine tumor, and it appeared that the testimony of her family physician was in effect, although vague in its terms, that she had a tumor, but this testimony is contradicted in express terms by the medical examiner of the company, and it also appears that the company had knowledge of the family physician's previous examination, and that he had suspected and declared the presence of the tumor, the case is for the jury to determine whether there had been any misrepresentation material to the risk.

Argued Feb. 11, 1902. Appeal, No. 4, Feb. T., 1902, by defendant, from judgment of C. P. Tioga Co., Sept. T., 1900, No. 246, on verdict for plaintiff in case of Silas N. Proctor v. Metropolitan Life Insurance Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit upon a policy of life insurance. Before MORRISON, J.

524    PROCTOR *v.* LIFE INS. CO., Appellant.

Statement of Facts—Opinion of the Court. [20 Pa. Superior Ct.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $2,042.83. Defendant appealed.

*Error assigned* among others was in submitting the case to the jury.

*E. N. Willard*, of *Willard, Warren & Knapp*, with him *David Cameron*, for appellant.—The case was for the court: Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527; March v. Metropoliton Life Ins. Co., 186 Pa. 629; United Brethren Mut. Aid Society v. O'Hara, 120 Pa. 256; Mengel v. Northwestern Mut. Life Ins. Co., 176 Pa. 280; Commonwealth Mutual Fire Ins. Co. v. Huntzinger, 98 Pa. 41; Wall v. Royal Society of Good Fellows, 179 Pa. 355; Smith v. Northwestern Mut. Life Ins. Co., 196 Pa. 314; Fidelity & Causalty Co. v. Alpert, 28 U. S. App. 393; Maier v. Fidelity Mut. Life Assn., 47 U. S. App. 322; McClain v. Provident Savings Life Assurance Society, 30 Ins. Law Jour. 438.

*D. W. Baldwin*, for appellee.—The case was for the jury: Claflin Co. v. Querns, 15 Pa. Superior Ct. 464; Taylor v. Burrell, 7 Pa. Superior Ct. 461; Newman v. Edwards, 34 Pa. 32; Leary v. Electric Traction Co., 180 Pa. 136; Centre County Banking Co. v. Gephart, 175 Pa. 417; Brinser v. Longenecker, 169 Pa. 51; Serfass v. Dreisbach, 141 Pa. 142; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Burkholder v. Stahl, 58 Pa. 371; Stewart v. Equitable Mut. Life Assn., 81 N. W. Repr. 782; Schwartz v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 285; Quirk v. Metropolitan Life Insurance Co., 12 Pa. Superior Ct. 250; Keatley v. Travelers' Insurance Co., 187 Pa. 197; Barnes v. Fidelity Mutual Life Association, 191 Pa. 618; Smith v. Metropolitan Life Insurance Co., 183 Pa. 504; Dietz v. Metropolitan Life Insurance Co., 168 Pa. 504; McGraw v. Metropolitan Life Insurance Co., 5 Pa. Superior Ct. 488.

OPINION BY ORLADY, J., July 10, 1902:

In March v. Metropolitan Life Insurance Co., 186 Pa. 629, it was held that under the Act of June 23, 1885, P. L. 134,

a misrepresentation or untrue statement in the application, if made in good faith, shall not avoid the policy unless it relate to some matter material to the risk. Ordinarily questions of good faith and materiality are for the jury, and when the materiality of a statement to the risk involved is of itself of a doubtful character, its determination should be submitted to the jury, but it was never intended by the act of 1885, nor did that act assume to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false.

In Lutz v. Metropolitan Life Insurance Co., 186 Pa. 527, it was held that as a matter of course there could be no doubt that previous spitting of blood, or illness, or confinement to the house by reason of illness, or medical service, or the attendance of physicians, or having consumption, are subjects of the most serious and material character, and have always been so held by the courts. In cases that are manifest and free from all doubt, the act of 1885 makes no change in the law, and the duty of the court is now as it was before the passage of that act.

In the case before us the application is dated January 29, 1900, the policy was issued February 16, 1900, and the subject of insurance, Olivia E. Proctor, the wife of the plaintiff, died March 26, 1900. In the answers made by the applicant to the medical examiner of the company, which answers are declared, agreed and warranted to be full, true and correctly recorded, Olivia E. Proctor answered "No" to fifty-six interrogatories as to whether she had any of the diseases or abnormal conditions specified therein. To an interrogatory, "Have you ever had cancer or any tumor?" she answered, "No," and it is claimed by the company that this answer was known by her to be untrue. Another special question and answer is made the subject of defense: "6. (*a*) Name and residence of your usual medical attendant? A. H. Cobb, Ulysses, Pa. (*b*) When and for what have his services been requested? Once within a year; kidneys did not act properly." The defense urged on the trial was that it had been falsely represented that Olivia E. Proctor, at the date of said application, was in good health, when in truth and in fact she was suffering from an intro-uterine tumor. A request was made by the defendant for binding instructions,

which was refused, and in order to determine whether her answer to the question as above quoted was true or not, the case was submitted to the jury as follows: "We say to you, if this was a misrepresentation it was a material one. The answer to this question was a material thing as to the contract of insurance. Now, if you find in 1898, or in October, 1899, or at the date of her application, January 20, 1900, that Olivia E. Proctor had a tumor, as described by Dr. Cobb, then the plaintiff cannot recover; and it is not material whether she or the plaintiff or either of them knew it or not."

It is conceded by the appellant that the important question is one of fact, to wit: whether Mrs. Proctor had a tumor at any time prior to the date of her application for insurance. This, so far as the oral evidence was concerned, was the only defense to the action. After a review of all the testimony we feel that this fact was not so clearly established by the testimony of Dr. Cobb as to make it the duty of the court to declare it to be an absolute and visible one which would avoid the policy. While he states, "I found a tumor, lying mostly in the cavity of the vagina and extending up the inside of the uterus or womb," he qualifies the statement by adding, "Well, of course it is a little mite vague when you examine with just your finger, but as near as I can judge from the mouth of the womb down into the vagina it was probably two and a half inches long and I would think perhaps from one inch to one and a half inches thick through in diameter; it was of a rough nodulated condition or surface, and was of a bleeding lacerated character." He stated further that he told the husband (this plaintiff), that "There was a tumor there of some character, he was not positive as to the character of it." He testified that at a second examination in October, 1899, the conditions were found very much the same and that he advised the patient to go to a hospital for examination and treatment; and he also testified that at his last visit the husband stated to him that he thought his wife had been cured, to which the physician replied, "I told him that I hoped she had but I was afraid it would come back again."

Opposed to this confident diagnosis of Dr. Cobb was the positive testimony of the husband that Dr. Cobb had not told him that the wife had a tumor, but that he stated that he was not certain and did not know, and that between the first visit

and October, 1899, the wife "was just as well as she ever was."

Dr. Prichard, the examining surgeon of the defendant company, made a careful examination of Mrs. Proctor for this insurance on January 30, 1900, and again during her last illness, as well as a postmortem examination the day after her death. He testified that he did not find a tumor at any time, and that Mrs. Proctor died of peritonitis induced by rectal fistula into the vagina. In the answers to the questions of Dr. Prichard, the defendant's medical examiner, whose duty it was to impress upon the applicant the importance of full and truthful answers to every interrogatory, Mrs. Proctor made affirmative answers to the following questions: " Have you ever had any disease or disorder of the genital or urinary organs ? Uterine disease or displacement? Menstrual disarrangement? " There was other evidence adduced by the plaintiff and defendant, that rather increased than relieved the doubt of the existence of a tumor prior to her application. Mrs. Proctor was not bound to accept the uncertain diagnosis of Dr. Cobb, which was made after an admittedly superficial and unsatisfactory examination, when her subsequent good health directly contradicted its truth. The suspected organ was within the body and the actual presence of a tumor could not be determined by a hasty digital inspection. She was bound to make truthful answers, and this plaintiff is bound by her answers even if she was honestly mistaken in her replies. The questions propounded directed her attention to particular subjects, and her answers invited a special investigation of and search into the organs referred to. She stated to the examining physician that " Dr. Cobb was called in and he said he was afraid she had a tumor, and the next day she said there was something like a chunk or a clot came away from her and nothing of the kind had been there since." The physician who had approved the risk and made a number of physical examinations was asked, " Taking into consideration the examination you made, as you have testified to, with the speculum and digital manipulation, both exterior and interior, in the vagina and rectum, had you known that Dr. Cobb had given it as his opinion that she had a tumor, would you have hesitated after the examination to say. that she had none, even though you had known that he had said she had

one ? " and he replied, " She had no tumor when I examined her." The answers to the questions were not only to be true but full and fair : Smith v. Mutual Life Insurance Co., 196 Pa. 314.

It would be extremely hazardous for the courts to rely on such an ambiguous diagnosis as is described in this testimony in determining as a matter of law the existence of an internal tumor. Good faith is demanded by both parties to the contract. The company had knowledge of Dr. Cobb's previous examination and that he had suspected and declared the presence of a tumor. Its examining physician declined to accept the theory of Dr. Cobb, when the subject for insurance was in his hands for examination, and relied upon his own tests as to the physical presence of a tumor, and these confirmed the truthfulness of her answers. Mrs. Proctor was forty-four years of age ; it was admitted that she had some uterine disease, enlargement or displacement ; her menstrual functions were disturbed and the kidneys acted irregularly. Her answers to Dr. Prichard suggested all of these afflictions. It was not pretended that the alleged tumor was malignant in character or was " a cancer," in the meaning of the policy. Had it been of that type it would have remained and been certainly discovered by Dr. Prichard. Was it a phantom which passed away under Dr. Cobb's treatment or did it ever exist? In view of the uncertainty of definitions of such pathological conditions as tumors, and the positive contradictions in the evidence as to the existence of any abnormal condition, it was purely a question of fact for the jury to determine. The appellant's case hinged on the testimony of Dr. Cobb, whose credibility was for the jury, and the verdict means that his diagnosis was wrong and that her answer was true.

The other answer, of which complaint is made by appellant, to wit: " When and for what have his services been required ? A. Once within a year ; kidneys did not act properly," was not false or misleading in the light of the testimony of Dr. Prichard, which shows that he was fully informed of Dr. Cobb's relation to the case and his theory in regard to it, the complaint suggested by the answer being the real reason for sending for Dr. Cobb. The real defense was fully and fairly submitted to the only tribunal authorized to pass upon it, and the judgment is affirmed.