## Prudential Insurance Co. of America v. Stanulonis et ux.

P. H. *Burke* and M. M. *Burke*, for plaintiff.
George M. *Gerber* and A. D. *Knittle*, for defendants.

KOCH, P. J., March 5, 1928.—According to the bill, which must be taken as true for the purposes of the present questions, the defendants are husband and wife, residents of Shenandoah. They had a son by the name of John Stanulonis, who was born April 21, 1910, and died Feb. 7, 1927. He had lived with his parents. John made written application to the plaintiff on April 27, 1926, for a contract of insurance on his own life, and submitted, also in writing, declarations in lieu of a medical examination, which constitute a continuation of, and form a part of, said application in writing. The defendants in this case procured and induced John Stanulonis to make and submit said application and said declarations to the plaintiff. They encouraged and assisted him in the preparation and submission of the same, and they are the parties to whom the insurance is to be paid upon the death of the insured. Relying upon the honesty and good faith of the said John Stanulonis and his parents and upon the statements and answers in said application and declarations contained, and in consideration thereof, the plaintiff, on May 10, 1926, executed and issued to said John Stanulonis, and on his life, a twenty-payment life insurance policy for the sum of $2000. The said application and said declarations are by the terms of the insurance made a part of said policy or contract of insurance, a copy of which is attached to the bill in equity. The cause of the death of John Stanulonis was heart disease, technically, myocarditis and cardiac dilatation. On Feb. 23, 1927, the defendants submitted to the plaintiff proof of the death of John Stanulonis and demanded payment of the amount of the policy. Among the said written declarations of John Stanulonis it was represented that, at the time of making said applica-

tion, April 27, 1926, he had no physical or mental defects; that he had never had a serious illness; that he was then in good health; that during the three years preceding said application he had not been attended by a physician for any physical complaint or ailment; that during the three years preceding said application he had not lost any time from work through illness, and that he had never had any heart trouble. All these representations were untrue, false and fraudulent and were made by John Stanulonis, aided and encouraged therein by his father and mother, for the purpose of cheating and defrauding the plaintiff out of the amount of the said policy, by collecting $2000 on the death of John Stanulonis from a disease that the defendants knew he had at the time the representations were made. On April 27, 1926, and for some years prior thereto, John Stanulonis had, and had had, chronic heart trouble. During three years prior to April 27, 1926, he could not, because of illness, attend the public schools where he was enrolled as a pupil. During said three years he had been treated by a physician for heart disease; he was not in good health on said date, having had a serious illness, to wit, heart disease, and had had the same for some years prior thereto, the same being a serious physical defect. And the defendants knew that John Stanulonis was suffering from heart disease at the time of making said application for insurance on his life, and that he had for some years prior thereto been under treatment of a physician for the same; and they also knew that he could not long survive with such disease. For said reasons, the plaintiff prays that the said contract be rescinded and the policy of insurance be declared null and void.

The defendants' preliminary answer is based upon the alleged grounds that: (a) Equity has no jurisdiction under the facts set forth in the bill of complaint, for the reason that the liability of the plaintiff had attached by the death of the insured before the filing of this bill of complaint, and (b) that, upon the facts averred, the plaintiff has a full, complete and adequate remedy at law.

It is provided in the policy that it shall be incontestable after one year from its date, except for non-payment of the premium. The date of the policy is May 10, 1926, and this suit was begun May 4, 1927, no suit having been brought by the defendants to enforce collection of the face of the policy. The death of the insured within the first year after the policy was issued did not end the right of contestability of the policy; contestability survived until it expired by its own limitation upon one year from the date of the policy: Feierman v. Eureka Life Ins. Co., 279 Pa. 507. Within that year the complainant could disavow its liability in such form as to effect a cancellation of its contract: Ibid.

Where an insured warrants the truth of the statements made in his application for a policy and untrue answers are made to questions which are material, recovery may not be had on the policy within the period of contestability fixed by the policy: Feierman v. Eureka Life Ins. Co., 279 Pa. 507; Murphy v. Prudential Ins. Co. of America, 205 Pa. 444; Smith v. Northwestern Mutual Life Ins. Co., 196 Pa. 314; March v. Life Ins. Co., 186 Pa. 629, and Arnold v. Life Ins. Co., 20 Pa. Superior Ct. 61. We have no doubt that, if the fraud alleged in this case had been discovered during the lifetime of the insured, proceedings in equity for the cancellation of the policy would have been the proper remedy. Or if the defendants now here had brought suit upon the policy within the period of contestability, the insurance company could show the fraud in bar of the action; but, as no suit was brought within the period of contestability of the policy, it became necessary for the

insurance company, within the period of contestability, to disavow its liability on the policy. "The insurer must at least disavow liability within the contestable period to be relieved—not necessarily by legal action, but by some definite step specifying the ground of complaint in such form as to effect a cancellation of the contract:" Feierman *v.* Eureka Life Ins. Co., 279 Pa. 507. Such an avowal has now been made by filing the bill in equity before us, and the right of the insurance company to contest the policy on the ground of fraud is preserved, so that it now has a complete and adequate remedy at law. The preliminary objection to this bill, to wit, "That upon the facts averred, the plaintiff has a full, complete and adequate remedy at law," must be sustained. But Equity Rule 49 provides that "(1) If the only objection sustained is that the plaintiff has a full, complete and adequate remedy at law, the bill shall not be dismissed, but shall be certified to the law side of the court for further proceedings," and that shall be done.

And now, March 5, 1928, the preliminary objection that the plaintiff has a full, complete and adequate remedy at law is sustained and the bill is certified to the law side of the court for further proceedings, in like manner as if the defendants in this case had brought an action of *assumpsit* against the complainant on the insurance policy attached to the bill of complaint, the parties hereto to so formulate their pleadings as to create a proper issue for submission to a jury, to which issue the defendants in this case shall be the plaintiffs and the plaintiff in this case shall be the defendant.