## Commonwealth Mutual Fire Insurance Company *versus* Huntzinger.

1. In an action upon a policy of insurance, where the defense is a breach of warranty upon the part of the insured, it is immaterial whether the insured in making the warranty acted in good or bad faith, or whether he believed the facts warranted to be true or not. If the facts warranted were false, the insured cannot recover.

2. Knowledge by the insurer or by him and the insured of a breach of a warranty at the time it is made does not relieve the insured from the

consequences of the breach, and is no basis for reforming the policy, though equity will reform it in the case of mutual mistake of fact.

3. An applicant for a policy of insurance, in answer to a question in the application, with reference to the amount of insurance already placed upon his premises, answered, $1,500 or $2,000. The agent of the company, who was filling up the application, said the exact amount should be fixed. The applicant replied that he had not his policy with him, but he thought the amount was $1,500. The agent, agreeing that this was the amount, inserted it in the application. The real amount was $2,000. The application was, by the terms of the policy issued in pursuance thereof, made a part of said policy, and every fact therein stated was warranted to be true. A loss afterwards occurring under the policy, suit was brought by the insured against the company, who defended on the ground of breach of warranty: *Held*, that the defendant was entitled to judgment.

4. Where a policy of insurance provides that notice of additional insurance, or of any change in existing insurance, shall be given to the company by the insured in writing, and be acknowledged in writing by the secretary, the mere knowledge of the company's agent as to such subsequent insurances, or change in existing insurance, is not such notice to the company as will bind it.

May 6th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lancaster county :* Of May Term 1881, No. 86.

Debt, by F. Huntzinger to use, etc., against the Commonwealth Mutual Fire Insurance Company, upon a policy of insurance for $1,200 issued by the defendant, insuring from fire a stock of goods in a frame store in Tremont, Schuylkill county. The goods were totally destroyed by fire during the life of the policy.

On the trial, before PATTERSON, J., the plaintiff put in evidence the application and policy. The former contained the following : " This application shall form part of this policy of insurance, *and all the statements herein made shall constitute warranties on the part of the insured. . . .* Q. What amount is there insured on the property, in what company and in whose name ? Ans. $1500, Pennsylvania Mutual, of Columbia, Pa.—Applicant's."

The policy contained the following : " Reference being had to the application of the insured for a particular description and which shall form part of this policy. . . . And provided further, that in case the insured shall have already any other insurance against loss by fire on the property hereby insured, not notified to this company in writing, then this insurance will be void and of no effect."

In point of fact the answer to the above question in the application was untrue, the prior insurance in the Pennsylvania

[Commonwealth Mutual Fire Ins. Co. *v.* Huntzinger.]

Mutual Company being $2,000, instead of $1,500, as stated. The plaintiff proved, under objection, by the agent of the company defendant, who effected the insurance, that in preparing the application the plaintiff, in reply to the said question answered, " Either $1,500 or $2,000, in the Pennyslvania Mutual, he wasn't sure which, but was under the impression that it was $1,500." The agent said, " We ought to know for sure," but put it down $1,500. The testimony on this subject is more fully recited in the opinion of this court.

The defendant presented a point, which, with the answer thereto, was as follows :—

" The plaintiff's answer, '·$1,500, Pennsylvania Mutual, of Columbia, Pa.,' " to the question, ' What amount is there insured on the property, in what company, and in whose name ?' in the application signed by the plaintiff, making all the statements in said application warranties on the part of the insured, when in fact the insurance in said Pennsylvania Mutual, of Columbia, Pa., was $2,000, prevents the plaintiff from recovering on the policy sued on, and the verdict must be for the defendant."

Answer. " The court answers this point by saying, that the law of the point is determined by the finding of the fact or, facts by the jury. Mr. Huntzinger's testimony, as stated in this point, does not exactly accord with the testimony as given —the plaintiff having made the application to and with the defendant's agent, acting within the scope of his authority, and therefore binding his principal—the evidence as to such agent's authority, showing no limitation of authority, and with the knowledge by the plaintiff, that the same agent was also the agent of the Pennsylvania Mutual, of Lancaster county, who had insured the applicant to the sum of $2,000, and not· $1,500. If the answer of plaintiff to the question put by the said agent was made in good faith, and the agent replied, ' We will put it down $1,500, because I think it was that ;' if there was no collusion between plaintiff and the agent to defraud the Commonwealth Mutual Fire Insurance Company in the procurement of the policy ; and if, as the uncontradicted testimony shows, this company—defendant—as late as Nov. 4th 1880, have, by its board of directors, actually assessed the premium note of Huntzinger, given on this policy, here sued upon ; and as the condition of this policy, or one of them, was that the applicant must reveal any and all prior insurance ; if you believe the evidence of Jas. W. Ziebach, the agent, and believe that he and Huntzinger at the time of the application, had honestly, and bonâ fide, entirely forgotten the fact, as to the exact amount insured prior in the Pennsylvania Mutual

[Commonwealth Mutual Fire Ins. Co. *v.* Huntzinger.]

Company, then the mistake was mutual—both dealt. under a mutual mistake in respect to that matter of fact—it will not vitiate in itself, this policy, in the absence of all fraud ; and the defendant has no defense in this suit, but the proof of fraud, and we decline to affirm this point of defendant. The testimony of the whole case must go to the jury."

Verdict for the plaintiff for $1,350, and judgment thereon. The defendant took this writ of error, assigning for error, *inter alia*, the answer to the point above given.

*Cottrell* and *H. M. North*, for the plaintiff in error.—The sole question in this case is the effect of the warranty in the application, as distinguished from a mere representation. The court, in their answer to our point, negatived the absolute and binding effect of the broken warranty, as a bar to the plaintiff's recovery. It is not disputed that the statement as to the amount of insurance existing in the other company was a warranty, and that it was untrue, and there is no allegation of fraud or deception by the agent in filling up the application. Whether plaintiff acted in good faith or not is immaterial. He deliberately warranted the truth of a material fact, which was untrue. On general principles of law, as well as under the express provision of the policy, such breach of warranty is a bar to the plaintiff's recovery on the policy : Cooper *v.* Farmers' Mut. Fire Ins., Co., 14 Wright 299 ; Eilenberger *v.* Protective Fire Ins. Co., 8 Norris 464 ; McClure *v.* Watertown Fire Ins. Co., 9 Id. 277 ; Birmingham Fire Ins. Co. *v.* Kroegher, 2 Id. 64 ; Lancaster Fire Ins. Co. *v.* Leuhéim, 8 Id. 497 ; Pottsville Mut. Fire Ins. Co. *v.* Horan, 8 Id. 438 ; Smith *v.* Ins. Co., 12 Harris 320. The case is unlike those where the agent of the company intentionally or negligently wrote in the application a false answer, when a true one had been given by the applicant.

*J. S. Gobin* (with him *A. J. Kauffman*, and *A. J. Eberly*), for the defendant in error.—It is admitted that this was a fair and honest loss, and the evidence shows that the company has levied and collected an assessment to meet it. The sole defense is the technical one resting on the effect of the warranty, and the Cooper case, 14 Wright 299, is chiefly relied upon to defeat the plaintiff's claim. But this case is clearly distinguishable. There the question was as to the existence of incumbrances on the property, and the answer was "Not any." In the present case the plaintiff's answer was true, so far as it went—that $1,500 was insured in the Pennsylvania Mutual Company—but omitted to state that $500 additional was so insured. The applicant

[Commonwealth Mutual Fire Ins. Co. v. Huntzinger.]

honestly expressed to the company's agent, who was filling up the application, his uncertainty as to whether the amount was $1,500 or $2,000, thus putting the agent on inquiry, but the latter was satisfied to accept the plaintiff's impression that it was $1,500, instead of verifying the amount, or insisting on the plaintiff's doing so. A bonâ fide answer thus given is very different from a total denial of the existence of incumbrances. The agent here was acting within the scope of his employment by the company, which was not defined and limited in writing, as in the Cooper case. That his testimony was admissible, and the company was bound by his act, is shown by the following authorities: Watertown Fire Ins. Co. v. Simons, 37 Legal Intell. 503 ; Insurance Co. v. Wilkinson, 11 Amer. L. Reg. 483 ; May on Insurance, § 462 ; Eilenberger v. Ins. Co., 8 Norris 464 ; Smith v. Ins. Co., Id. 287 ; Howard Ins. Co. v. Bruner, 11 Harris 57 ; Conn. Gen. Life Ins. Co. v. McCurdy, 8 Norris 372.

Mr. Justice TRUNKEY delivered the opinion of the court, June 20th 1881.

The application and policy evidence the contract between these parties, and it is stipulated that " this application shall form a part of this policy of insurance, and all the statements herein shall constitute warranties on the part of the insured." One of the statements is, that the amount insured on the property is $1,500 in Pennsylvania Mutual, of Columbia. In fact, the amount of insurance was $2,000. To avoid the consequences of a breach of his warranty, Huntzinger called James W. Ziebach, who testified that he was agent for the company defendant, and also for the Pennsylvania Mutual, of Columbia ; that the defendant did not furnish him blank policies to write and issue ; that he received the application, sent it to the company, and if it accepted the risk, the policy was forwarded to him and he delivered it to the insured. When he took this application he read the question, " What amount is there insured on the property, in what company, and in whose name ?" Huntzinger " Said he had $1,500 or $2,000 insurance in the Pennsylvania Mutual, he didn't know which. He thought it was $1,500. I said, ' We ought to know for sure.' He said, ' My policy is at the house.' He didn't have it in the store, and he was not sure about it. He was under the impression it was $1,500, and put it down $1,500. I said, we would put it down $1,500 because I thought it was that. And he signed the application."

It is clear beyond question that the plaintiff intended to make the statement as written when he signed the paper, and knew just what he was doing. There was no mistake or fraud

by the agent in writing one thing when the answer was another. The oral and written testimony entirely accord. Each kind shows that Huntzinger stated the amount of insurance was $1,500 and that the true amount was $2,000. The plaintiff must have known that the policy was not issued by the agent, but by the company, after its acceptance of the risk. There is not the slightest evidence that he was induced to sign the application by the agent's deceit. If honest, neither remembered the amount of insurance, but the policy was in the applicant's house. If a fraud was perpetrated, it was participated in by both agent and insured, for they agreed upon the same thing. However, under the charge of the court, it may be taken as settled by the verdict, that the plaintiff committed no fraud, but on the contrary acted in good faith when he warranted a statement which he did not know to be true and could have ascertained it was false by looking at his policy. The court charged that if Huntzinger and Ziebach had forgotten "the exact amount insured prior in the Pennsylvania Mutual Company, then the mistake was mutual—both dealt under a mutual mistake in respect to that matter of fact—it will not vitiate in itself this policy, in the absence of fraud; and the defendant has no defense in this suit, but the proof of fraud." If this ruling be correct, nothing can be of less value than the warranty of a representation—the representation would be just as good without its warranty.

The distinction between a representation and a warranty is too broad and well-defined to require remark. For an injury arising from a false representation, the remedy is in case for the deceit, bad faith lying at its foundation; for an injury by a breach of warranty the action is upon the contract, and it is immaterial whether the defendant did or did not believe the fact he warranted. Precisely the same principles apply in making a defense on the ground of the plaintiff's false representation, or breach of warranty, as would in sustaining an action on such ground. Here, no question was raised as to false representations by Huntzinger which involved fraud or bad faith on his part. The testimony adduced by himself plainly revealed his broken warranty, and the chief question was as to the effect of that upon his claim under the policy. It is not material whether the agent knew of the breach. "Mere mutual knowledge by the assured and the agent of the insured of the falsity of a fact warranted, is entirely inadequate to induce a reformation of the policy so as to make it conform with the truth. It is rather evidence of guilty collusion between the agent and the assured, from which the latter can derive no advantage." Knowledge by the underwriter, or by him and the assured, of the breach of

a warranty, at the time it is made, does not relieve the assured from the consequences of the breach, and is no basis for reforming the policy, though equity will reform it, in the case of mutual mistake of facts. It is not true that the rule which prevails in sales of personal property, namely, that a warranty does not embrace defects known to the purchaser, is also extended to warranties contained in policies of insurance. The purpose in requiring a warranty is to dispense with inquiry and cast upon the assured the obligation that the facts shall be as represented. A representation and a warranty are essentially different things, and call for the application of different rules of law. Knowledge that the answer was untrue might relieve against a false or imperfect representation : State Mutual Fire Ins. Co. v. Arthur, 6 Casey 315. This doctrine, enunciated in that case, has not since been doubted in Pennsylvania.

In Cooper v. Farmers' Mutual Ins. Co., 14 Wright 299, it was held that that which is a warranty in a policy of insurance by its terms, cannot be shown by parol evidence to have been inserted by mistake. This certainly is sound, if understood with reference to such mistakes of the assured as when he makes a false statement, believing it to be true, without having been deceived and misled by the other party. No principle of law will enable a party who guarantees a fact upon which a contract for insurance is based, which fact is afterwards found not to exist, to enforce the contract. He agrees to answer for the truth of the fact, and cannot escape on the ground of his mistake as to its existence. But if by a fraud or mistake of the other party, or of the agent of the other party while acting within his authority, he be induced to sign a statement which he did not make and did not intend to make, such statement is not only void as to himself, but he shall not lose the benefit of a contract for which he paid the stipulated consideration, and held without knowledge of the mistake or fraud. If an agent for an insurance company, intending to write an answer to his question as made by the applicant, write something else, and the paper is signed, both believing the answer correctly written, there is a mutual mistake, and the policy may be reformed. Where the answer is written as made, there is no mutual mistake, and no relief for him who warranted it, unless the agent deceived him into the making of it.

The cases of Smith v. Farmers and Mechanics' Mutual Fire Ins. Co., 8 Nor. 287, and Eilenberger v. Protective Mutual Fire Ins. Co., Id. 464, are not at all in conflict with prior decisions as to the effect of a warranty actually made ; they relate to the admissibility of evidence to show fraud or mistake by an agent of the company, of which the assured had no knowledge till after his

loss, and his right to recover upon his· policy, notwithstanding such fraud or mistake. Of like purport is the decision in Insurance Co. *v.* Wilkinson, 11 Amer. L. Register 485, where it is said, in the opinion, that the insured did not intend to make the representation when he signed the paper, did not know he was doing so, and had refused to make any representation on the subject; it was held that the answer written by the agent was his, not the applicant's, and his principal, the company, was bound by it.

We are of opinion that plaintiff's fifth point should have been refused, and the defendant's point affirmed. If the jury believed the evidence of Ziebach, the plaintiff was not entitled to recover. The facts assumed in the defendant's point were shown by written evidence, and were not disputed.

The conditions of insurance provide that notice of additional insurance, or of any change in existing insurance, shall be given to the company by the insured in writing, and shall be acknowledged in writing by the secretary; and no other notice shall be binding or have any force against the company. In absence of evidence of waiver of the notice required in this stipulation, we do not think " the jury would be justified in inferring that the knowledge of the agent will bind the principal of notice of subsequent insurance or surrender of previous insurance." The parties agreed that written notice should be given, and in like manner acknowledged by the secretary; mere knowledge of an agent is not the equivalent of that.

Judgment reversed.