## Adam Jacoby and Brother *v.* North British and Mercantile Insurance Company of London and Edinburgh, Appellant.

*Evidence—Admissibility of affidavit to show admissions—Rule of court.*

Where an affidavit of defense in a suit on an insurance policy admits the execution of the policy and its delivery, but denies the adjustment and the furnishing of proofs of loss, the specific averment of facts and affidavit is admissible in evidence for the purpose of showing these admissions.

*Evidence—Affidavit of defense not admissible as evidence for defense.*

An affidavit of defense is not admissible in evidence on the part of the defendant as evidence of the facts alleged therein.

*Statutes—Act of 1883—Insurance—Notice to agent who countersigned policy.*

Under the Act of June 27, 1883, P. L. 165, the conditions of the policy are complied with when notice of loss and preliminary proofs are given to the agent of the company who countersigned the policy within the time designated by the act.

*Practice, C. P.—A point of law refused which assumes a fact whose existence is the crucial point of the case.*

The crucial point of the case being whether or not proofs of loss had been received by the defendant company it was not error to refuse a point which assumed that proofs had not been received when there was sufficient evidence given by the plaintiff to carry the case to the jury.

*Cross-examination—Scope touching inconsistent statements.*

It is permissible on cross-examination to show that a witness on a prior

occasion has made statements inconsistent with his present one for the purpose of showing that his account of matters, as to which he is giving testimony, has not always been the same, but not for the purpose of showing that witness had deceived others. It is a legitimate way to impeach the testimony of a witness.

*Insurance—Rule as to incumbrances and false statements.*

Subsequent incumbrances defeat the policy, whether they fall upon the property with or without the knowledge or consent of the insured; this rule also applies where a false statement is made in the application upon which the policy is issued; but it is held that judgments which were incumbrances prior to the time of issuing the policy do not invalidate it when it does not appear that the plaintiffs ever made any false statement as to them upon the faith of which the property was insured.

*False statements in proof of loss—Fraud—Question for jury.*

Mere concealment of the existence of incumbrances, made in proofs of loss, do not defeat the policy without evidence that it was done wilfully and knowingly and with a view to cheat the company.

*Insurance—Defective answers in proof of loss—Duty of company to return.*

An insurance company may not hold proofs of loss with knowledge of the defect in them, and then, on the trial, attempt to avail itself of the defects unless it has notified the insured and given him a chance to correct them. Failing in this, it will be presumed that it is satisfied with the proofs as received in the first instance.

If the answer to a question in proofs of loss is ambiguous, or if there is no answer at all, and if the insurer wants specific, definite information, it is its duty to return the proofs with information as to the defects to be remedied and ask for more specific proofs.

Argued March 21, 1899.    Appeal, No. 34, March T., 1899, by defendant, from judgment of C. P. York Co., on verdict for plaintiff.    Before Rice, P. J., Beaver, Orlady, Smith, W. W. Porter, W. D. Porter and Beeber, JJ.    Affirmed. Opinion by Beeber, J.

Assumpsit on policy of fire insurance for $1,000.

It appears from the evidence that property was destroyed by fire on June 15, 1897.    Twenty-two companies, including defendant, had insured in various sums amounting in the aggregate to $16,000.    It was agreed by counsel that the amount that plaintiffs were entitled to recover in this case, if anything, was $902.02.    It was contended by defendant company that it was not represented by any one authorized to act for it at the meeting of the agents held to adjust the loss, and that no proofs

of loss as required by the policy were served upon the company within sixty days of loss, and that, further, no notice of loss was given within ten days as was required. There was evidence tending to show that notice and proofs of loss had been given to Eugene F. Weiser, an agent of the defendant company who was present at the time the adjustment of the loss was made. There was no evidence that any notice was given to the plaintiffs that their proof of loss was defective, or that anything further relative to the proofs of loss was required by the company. It also appears from the record that plaintiff filed a statement and specific averments of fact. Defendant filed an affidavit of defense in denial as required by Rule 4 of common pleas, York county, under the head of Admissions for the Purpose of Trial. It was alleged in the affidavit, among other facts and defenses, that plaintiffs had wilfully and fraudulently set fire to the insured property; that the conditions of the policy had not been fully complied with and it was denied that plaintiffs did all things and furnished all the information required by the company; it specifically denied receipt of notice, adjustment of the loss and receipt of proof of loss.

At the trial the plaintiffs submitted the following offers which were admitted by the court under objection of defendant:

[Plaintiffs (through Mr. Niles) offer in evidence the policy of the North British and Mercantile Insurance Company, numbered 2,193,631, insuring Adam Jacoby & Brother in the amount of $1,000 on property described therein, situated on the southwest corner of North George street and Hamilton avenue, York, Pa., and countersigned by Deininger & Weiser, agents, January 18, 1897, for the purpose of sustaining the issue on the part of the plaintiffs. (Policy handed defendant's counsel.)

Mr. Wanner: This offer to the jury, as I understand it?

Mr. Niles: Yes, sir.

Objected (through Mr. Wanner) to its admission as an instrument of evidence, its execution not having been proved, nor the fact that the parties purporting to have signed as agents were the agents of the defendant company at the time ; nor is the paper otherwise sufficiently identified as the one referred to by the plaintiffs or as declared in the specific averment of facts. Objected to for the purpose offered, or for any purpose in the present state of the proofs.

The Court: We admit the offer, and seal an exception for the defendant, it appearing that a copy of the policy of insurance was served upon the defendant in the averment of facts, and not denied by the defendant.] [5]

[Plaintiffs' counsel, Mr. Niles, offers to prove by the witness that on or about the 24th day of June, 1897, within ten days after the fire testified of, the witness delivered to Eugene Weiser, of the firm of Deininger & Weiser, the insurance agent who countersigned the policy upon which this suit is brought, a proof of loss for the defendant company, of which Weiser was the agent, which proof of loss was prepared by Weiser, signed and sworn to by the witness, and delivered to Weiser, for the purpose of sustaining the issue on the part of the plaintiffs, and showing notice of loss and preliminary proofs served upon the insurance agents who countersigned the policy.

Objected to, by Mr. Wanner, as inadmissible for the purpose of showing notice to the defendant company; there being no evidence that Deininger & Weiser were at the time of the furnishing of the alleged notice agents of the defendant company, or what was the scope or extent of their powers as agents at the time it is alleged that they countersigned the policy in suit. It is further objected, that the witness cannot characterize the paper as a proof of loss so as to give it standing as a fact in the case without he produces the paper itself, or proves its contents. The offer is inadmissible for any purpose in the present state of the proof, it being specifically denied in the affidavit of defense that any notice of loss or proofs of loss whatever were ever received by this company.

Mr. Niles: We now call upon the defendant company, in accordance with the call served upon it, to produce the proof of loss, and all notices, letters and papers in regard to this loss in the possession of the company, or of its agents.

Defendant by its counsel, Mr. Wanner, replies, first, that no such notice as has been referred to was served upon the counsel, nor with his knowledge upon the defendant, for such books, papers, or documents, at this trial; and replies further, denying at bar, as it has already denied on oath, that it has ever received any notice of proofs of loss whatever from these plaintiffs, and therefore cannot produce them.

Mr. Wanner: I do not recall that notice.

Mr. Niles: It was served on you November 27, 1897, at 3:47 o'clock P. M. (Alleged notice read.)

Mr. Wanner: To which counsel further replies that he has written to the defendant company, and in reply is informed that no proofs of loss, or notices of loss, were ever received in this case by the defendant company.

The Court: It appearing to the court that the agents named in the offer countersigned the policy, the presumption is that they remained agents of the company at the time of the alleged notice; and the defendant having denied any receipt of any proofs of loss at any time, or the possession of any such papers, we think the evidence is competent. We admit the offer, and seal an exception for the defendant.] [6]

[Mr. Niles: We offer to show by the witness, he having said that he did not make out and receive the proofs of loss for the defendant company, that in the proofs of loss he did make out for his other companies was a statement that the loss had been adjusted, and that the defendant company was to pay $901 and some cents, and that he well knew that unless a proof of loss was furnished, the defendant would not be obliged to pay that amount, for the purpose of cross-examination, and showing that if it is so, as he now says it is, that he did not make out and receive this proof of loss for the defendant company, he deceived the other companies, and also the plaintiffs; and for the purpose of cross-examination, and showing that his story is not correct. Evidence admitted. Exception to defendant.] [7]

[Mr. Niles: The witness having now said that he did not represent the defendant company at the adjustment, and that it was not represented at the adjustment, and he having admitted that he made out proofs of loss for other companies in which he stated that an adjustment had been made, and according to that adjustment the defendant company was to pay $901 and some cents, we offer to ask him, for the purpose of further cross-examination, as to why he made those proofs of loss that were contradictory of what he now pretends he knew to be the fact, for the purpose of discrediting him and showing that he is mistaken in his present statement, and that the testimony of Mr. Jacoby and Mr. Wogan is correct, and he is incorrect.

Objected to, by Mr. Wanner, as inadmissible for the pur-

pose for which it is offered, or for any purpose; that it is not proper cross-examination. The proposed question does not tend to contradict anything testified to before by the witness, or in any manner to discredit him.

The Court: Well, we think that the plaintiffs' counsel may ask the witness why he made out these lists in the manner described; that is, why he stated in those other two lists, that he said he made out, that this company should pay so much of the share of the loss. We will allow that question, and seal an exception for the defendant, why he stated in those two lists that he did make out that this company was to pay such a proportion of the loss, $900, or whatever it was.] [8]

[Mr. Niles: The witness having said that he had no special authority to send proofs of loss of the Jacoby & Brother fire to the North British and Mercantile Insurance Company, we offer to ask him whether or not his usual custom in regard to this company, and every other company, is not to notify the company of the loss; and to show that the proofs of loss are prepared, made out and forwarded to the company without any specific instruction or authorization from the company to that effect.

The Court: How does this become material under the act of assembly in regard to the subject? The witness having denied that he made out any proof of loss for the company at the time stated by one of the plaintiffs, Adam Jacoby, in his testimony, and the cross-examination being as to the fact whether he did or not, we think it is competent for the question to be asked the witness whether he did not forward the notice of loss to the company, and whether it is not the custom for him to make out proofs of loss for the companies, and for this company, and send them on. We allow the question to be asked, and we seal an exception for the defendant. We do not think it is very material one way or the other; but it may throw some light on whether or not the proof of loss was made out. I suppose that is the object of the question?

Mr. Niles: Yes, sir.

The Court: It is admitted for that purpose?] [9]

The court rejected the following offers made by defendant:

[Defendant's counsel, Mr. Wanner, in connection with the testimony already in, offers in evidence the affidavit of defense

filed in this case,—it has already been made an instrument of evidence by the plaintiffs,—to show the defendant's denial of receipt of any notice, or proofs of loss; and also the defendant's denial of being represented by any agent and adjuster.

Objected to, by Mr. Niles, as not the best evidence; as incompetent, misleading and inadmissible for any purpose as offered.

The Court: I understand that has already been offered in evidence?

Mr. Niles: No, sir.

The Court: We do not think the offer is competent and we overrule it.] [10]

[Mr. Wanner: Witness having stated that nothing was put in the proofs of loss as to judgments against him, defendant offers in evidence the records of the court of common pleas of York county, showing a judgment in favor of E. W. Spangler against Adam Jacoby and Samuel Jacoby for the sum of $2,000, No. 464, January term, 1894, entered February 21, 1894, and not satisfied at the date of the making of these proofs of loss; also the judgment of Sarah Gross against S. F. Jacoby and Adam Jacoby, to No. 466, January term, 1894, in the common pleas of York county, for $2,500, and remaining unsatisfied at the time of making the proofs of loss, for the purpose of showing incumbrances upon the property insured, which was real estate as well as personalty, and which under the terms of the policy are required to be set forth in the proofs of loss.

Objected to, by Mr. Niles, as not proper, legal or relevant evidence for the purposes offered, or for any of them; that the incumbrances referred to in the policy are the incumbrances mentioned in the policy itself, to wit: chattel mortgages on personal property, and that it is irrelevant and immaterial.

The Court: The only incumbrances provided against in the policy is chattel mortgages on personal property. There are no chattel mortgages in Pennsylvania, excepting in special cases, lumbering interest, and things of that kind. The incumbrances provided against are those upon personal property which are forbidden in the policy. We do not think the offer is competent in this case, and we therefore reject it, and seal an exception for the defendant.] [11]

The court refused the following points offered by defendant:

3. The uncontradicted evidence in the case being that Eugene F. Weiser, to whom plaintiffs allege they furnished proofs of loss, had no authority to adjust losses, the company defendant is not bound by any of his acts in connection with the adjustment of plaintiffs' loss by the various agents of the several companies who insured said plaintiffs; and if the jury believe the testimony of the plaintiff, Adam Jacoby, that the signing by him of the proofs of loss which he alleges he furnished to the agent, Eugene F. Weiser, was a part of and completion of the adjustment of the loss by the other companies' agents which had been begun the day before, then the act of Weiser in assisting plaintiff to complete the proofs of loss, and his alleged receipt of them at that time, as a part of the adjustment, are not binding upon the company defendant as an act of adjustment, and does not render it liable to pay the amount agreed upon in the adjustment by the other companies, as the proportion payable by the defendant company. *Answer:* This point is not correct as written, and is refused.] [1]

[4. The only legal effect of the alleged signing and delivery of proofs of loss at the adjustment, as testified to by the plaintiff, to Eugene F. Weiser, defendant's local agent, was to show compliance of the plaintiffs in the matter of furnishing them within the time required by the policy, and does not operate as a waiver on the part of the company, of any defects in proofs of loss themselves, as it appears they were not sent to or received by the company. *Answer:* This point cannot be affirmed as written; the statement of the testimony of Adam Jacoby, one of the plaintiffs, is not correctly stated in the point. He does not testify that he signed and delivered the proofs of loss to Eugene Weiser at the adjustment, but at the office of Kell & Williams on the 24th of June, 1897. This point is refused.] [2]

[5. There is no evidence in the case to show that the company defendant, or any of its officers, received any proofs of plaintiffs' loss at the general office; and if they had actually been delivered to the agent, Weiser, as testified to by the plaintiff, and he did not send them to the general office, or to the company defendant, the conditions of the policy have not been complied with, and plaintiffs cannot recover. *Answer:* There is no proof in the case of the receipt of the proof of loss at the general office of the company. The balance of the point is not correct, and is refused.] [3]

[7. Upon all the law and the facts of this case, the verdict of the jury should be for the defendant. *Answer:* This point is refused.] [4]

Verdict and judgment for plaintiffs for $901.02. Defendant appealed.

*Errors assigned* were (1–4) refusing defendant's third, fourth, fifth and seventh points, reciting same. (5–9) Admitting evidence in support of certain offers of plaintiffs, reciting said offers. (10, 11) Rejecting evidence in support of certain offers made by defendant.

*Nevin M. Wanner,* for appellant.—The fact that Weiser had no authority to adjust this loss was undisputed by any evidence, and defendant therefore contended that it was not concluded by anything alleged to have been done by him. The burden was upon the plaintiffs to show authority when they sought to bind the company by his acts : Amer. Underwriters Assn. v. George, 97 Pa. 238; Hays & Wick v. Lynn, 7 Watts, 524; Amer. Life Ins. & Trust Co. v. Shultz, 82 Pa. 46.

Even adjustments and promises made by general officers of the company, not in writing and indorsed upon the policy, as required by its conditions, have been held not to amount to a waiver of any breach of the conditions of the policy : Everett v. Ins. Co., 142 Pa. 332; Hocking v. Howard Ins. Co., 130 Pa. 170; Ins. Co. v. Conover, 98 Pa. 384; Ins. Co. v. Weiss Bros., 106 Pa. 20.

Besides the authority of the cases, the policy itself provides that no agent or officer shall waive any condition of the policy except in writing, indorsed upon the back of the policy, and this provision has been held good, as against the verbal promises of the president of the company himself : Universal Ins. Co. v. Weiss Bros., 106 Pa. 20.

If plaintiffs had even produced the proofs of loss alleged to have been furnished, their contents would not have been admissible as evidence of the amount of loss. Where the other evidence is meager and unsatisfactory as in this case, the court will reverse a judgment for the plaintiff : Cole v. Manchester Fire Assurance Co., 188 Pa. 345; Sutton v. Amer. Fire Ins. Co., 188 Pa. 380.

This policy provides, in the usual form, that it shall be avoided if the insured has misrepresented material facts, or if his interest in the property is not truly stated, or in case of any fraud or false swearing, by the assured touching any matter relating to this insurance or the subject thereof whether before or after the loss.

The court refused the defendant's offer to prove these incumbrances, because it held that the incumbrances contemplated in the above mentioned clause of the policy were chattel mortgages on personal property only, but this is not the usual construction of the word incumbrance in Pennsylvania, where chattel mortgages as a general rule are invalid. , The question should have been submitted to the jury with instructions that false answers and concealment of the existence of these incumbrances would avoid the policy: Ellis v. Agricultural Ins. Co., 7 Pa. Superior Ct. 264; Heffron v. Kittanning Ins. Co., 132 Pa. 580; Cumberland Valley Mut. Protection Co. v. Mitchell, 48 Pa. 374; Insurance Co. v. Schmidt, 119 Pa. 449; Hill v. Insurance Co., 103 Pa. 282.

And it was held in Claflin v. Com. Ins. Co., 110 U. S. 81, that the false statement, to bar recovery need not be made with the intention to cheat and defraud.

*H. C. Niles*, of *Niles & Neff*, with him *Horace Keesey*, for appellees.—A true history of this case should not have been hard to give.

The plaintiffs suffered a loss by fire on June 15, 1897. Representatives of the insurers adjusted the loss.

By agreement in this case the amount fixed by this adjustment as payable by this defendant, was admitted to be correct and that the verdict should be for that sum unless defendant could escape on other grounds.

The plaintiffs filed with their declaration a specific averment of facts sufficient to support their claim verified by affidavit, and served a copy thereof on the defendant, giving a copy of the policy and alleging the execution and delivery by Deininger and Weiser the agents of the company who countersigned the policy, the fire, an adjustment by an authorized agent of the company and furnishing of proofs of loss.

This was in accordance with the rule of court No. 4 under

the head of Admissions for the Purpose of Trial, which pro-
vides :

"If the plaintiff shall file with his declaration or statement,
separate and apart from his declaration or statement, a specific
averment of facts sufficient to support his claims, verified by
affidavit, and serve a copy thereof on the defendant or his
counsel of record, such items of claim and material averment
of facts as are not denied by the defendant, by affidavit filed
with or before plea pleaded, shall be taken as admitted."

The affidavit of defense admitted the execution of the policy
and the delivery by Deininger and Weiser, the countersigning
agents, but denied the adjustment and the furnishing of proofs
of loss.

For the purpose of showing these admissions the specific
averment and affidavit were offered to the court, and admitted,
which is decided in Neely v. Bair, 144 Pa. 250, to be the proper
practice.

The eleventh assignment reveals a curious inconsistency.
The defense had been that no proofs of loss had been furnished,
and upon call the defendant had failed to produce them; but
this did not prevent it from contending that these same proofs,
whose very existence it denied, contained false statements that
should avoid the policy.

To constititute such fraud or false answers or swearing in
proofs of loss as will render the policy void, it must be wilfully
made in regard to a material matter with the intention of thereby
deceiving the insurer: 7 Am. & Eng. Ency. of Law, 1047 ,
Franklin Fire Ins. Co. v. Updegraff, 43 Pa. 350.

Even if plaintiffs had sworn that there were no judgments
upon the land, when there were several, it would not affect the
policy, because in no way a material matter.

OPINION BY BEEBER, J., May 18, 1899 :

Although the pleadings in this case raised many issues of fact,
when the case came to trial the only question tried was whether
notice of the fire and proofs of loss had been sent to the defend-
ant. The plaintiffs were relieved of the necessity of proving an
adjustment or the extent of their loss in view of the defendant's
admission at the trial, that the amount claimed in the plaintiff's
statement was the share due by the defendant in case it was

liable at all.   This renders immaterial the first assignment of error, which is the refusal of the court to affirm the point submitted by defendant, asking the court to say that nothing done by Weiser at the time of filling up the proofs of loss could be binding on the defendant as an act of adjustment of the loss. As the question of adjustment was no longer in the case, it was immaterial whether the acts of Weiser on that occasion amounted to a binding adjustment or not.   In view of the rule of court set forth in the appellee's paper-book, which is in force in the court in which this case was tried, the acceptance of the policy in evidence, which is the subject of the fifth assignment, was proper. The refusal of the defendant's offer in evidence of the affidavit of defense as testimony to prove the defendant's denial of the receipt of notice of the fire and of the proofs of loss, which is the subject of the tenth assignment, was right.   No attempt has been made to show that the affidavit is evidence of the facts alleged in it, either under the said rule of court, or under any general rule of evidence.

The third and sixth assignments go to the sufficiency of the evidence to establish the plaintiffs' contention that proofs of loss were sent to the defendant.   The testimony on the part of the plaintiffs was to the effect that proofs of loss were made on a certain day by one Weiser, signed and sworn to by the plaintiffs and then delivered to him, who was one of the members of the firm of Deininger & Weiser, local agents of the defendant, which firm had also countersigned the policy.   All this evidence as to making out the proofs of loss was, of course, contradicted by Weiser, but the jury found for the plaintiffs.   It is insisted by the defendant that this is not sufficient evidence, even if believed, to prove that the proofs of loss were sent to any of the officers of the company.   The court below correctly decided that it was sufficient to prove a compliance with the terms of the policy, and that it was expressly made so by the terms of the Act of June 27, 1883, P. L. 165, which provided that where insured property was destroyed by fire in this commonwealth the conditions of the policy, as to notice of loss and furnishing of preliminary proofs, shall be considered complied with, if they are given to the agent of the company who countersigned the policy within a certain time.

The seventh, eighth and ninth assignments relate to the cross-

examination of the defendant's witness.   In his examination in chief he had testified that he had not filled out proofs of loss for the plaintiffs, nor had he sent any to the defendant.   Plaintiffs sought to avoid the effect of this by asking him whether he had not, at a prior time, made a statement in reference to this matter contradictory to the one which he had just made on the stand.   We think this was proper.   It is common practice to show, if one can, that a witness on a prior occasion had made statements inconsistent with his present one.   Such cross-examination is not admissible for the purpose of showing that the witness had deceived others, which was one of the announced purposes for which plaintiffs' counsel examined him in this way, but it is clearly admissible, under all the authorities, for the purpose of showing that his account of matters, as to which he is giving testimony, has not always been the same, which was the other purpose for which this examination was conducted. It is true such a witness has a right to explain any contradictions, if he can, and such right was exercised in this case—to such an extent, in fact, that we cannot believe that the defendant's case was weakened to any appreciable degree by this attempt to impeach the testimony of this witness.   In any event, it is a legitimate way to impeach the testimony of a witness, and we must sustain this well established rule.

The second assignment is to the refusal of the court to affirm the fourth point of the defendant.   So far as this point requested the court to charge that the delivery of the proofs of loss to the local agents did not operate as a waiver of any defects in them, as it appeared " they were not sent to or received by the company," we think it would have been an error to have affirmed it, because to have done so would have been a declaration by the court that it appeared that the proofs of loss had not been sent to or received by the defendant.   This was the crucial point of the case.   There was testimony that the proofs of loss had been given to the countersigning agent, which, under the said act of assembly, is a compliance with the conditions of the policy requiring proofs of loss to be sent to the company.   It would have been plainly improper for the court to affirm this point which required it to assert that it appeared that proofs of loss had not been sent to or received by the defendant, when this was the very question to be decided by the jury,

upon the conflicting evidence as to proofs having been made out and given to the countersigning agents.

During the cross-examination of one of the plaintiffs he said that, in those proofs of loss which he had given to the agent, nothing was said as to the existence of incumbrances against their insured property. Defendant then offered in evidence the record of two judgments against the plaintiffs, which were liens against the insured property, so far as it was real estate, for some years prior to the date of the policy, and continued so down to the time of making proofs of loss, for the purpose of showing that the plaintiffs were precluded from recovering because they had sworn falsely as to the incumbrances upon the insured property, which was in violation of that clause of the policy making " false swearing by the insured touching any matter relating to the risk whether before or after loss " a defense to a claim upon the policy. The rejection of this offer is the eleventh assignment.

In the consideration of the question involved in this assignment, care must be taken to distinguish this case from those where a false statement is made in the application, upon the faith of which the policy is issued, Commonwealth Mut. Fire Ins. Co. v. Huntzinger, 98 Pa. 41, and from those where, in violation of a condition in the policy, an incumbrance falls upon the property, with or without the knowledge of the insured after the date of the policy and before loss, without notice having been given to the insured : Seybert v. Penna. Mut. Fire Ins. Co., 103 Pa. 282 ; Penna. Mut. Fire Ins. Co. v. Schmidt, 119 Pa. 449 ; Hench v. Ins. Co., 122 Pa. 128. In all the cases, of which these are types, it is uniformly held that false statements and subsequent incumbrances defeat the policy, whether they are made innocently or otherwise, or whether they fall upon the property with or without the knowledge and consent of the insured, but the present case belongs to neither one of these classes. It does not appear that the plaintiffs ever made any false statements upon the faith of which the property was insured, but it does appear by this offer that these judgments were incumbrances prior to the time of the issuing of the policy. In such a case it has been expressly decided that such judgments do not invalidate the policy : Dwelling House Ins. Co. v. Hoffmann, 125 Pa. 626.

It is strenuously insisted that these incumbrances should have been submitted to the jury with instructions that false answers in the proofs of loss and concealment of the existence of these incumbrances would avoid the policy. But mere false answers or concealment of the existence of incumbrances, made in proofs of loss, do not defeat the policy. It must appear that the false answers were made wilfully and knowingly, and with a view to cheat the company: Franklin Ins. Co. v. Updegraff, 43 Pa. 350. The case of Ellis v. Ins. Co., 7 Pa. Superior Ct. 264, cited by appellant, is easily distinguished from the present case. In that case the insured testified that she had knowingly made the false statements in her proof of loss. With this evidence in the case, we said: "This is not the case of mistake of statement unwittingly or ignorantly made. Such mistakes are open to correction. Here the sworn misstatements are made and repeated on the witness stand, with knowledge that they are untrue. The guilty knowledge determines the fraudulent intent. . . . The fact of false swearing is thus proven, and where perjury is thus knowingly committed, the question cannot be submitted to the jury whether the intent was to defraud. The intent is demonstrated not only by the acts of the insured but by her admissions." In the present case the offered evidence did not show that there was a false statement in the proof of loss knowingly made, but an omission to state something. The witness did not say that he stated in the proofs of loss that there were no incumbrances, but that nothing was stated as to them. If the defendant wishes to take advantage of defects in proofs of loss, which it insists at the same time that it never received, it must stand charged with the duties of one who has received defective or unsatisfactory proofs. If the answer to the questions in proofs of loss is ambiguous, or if there is no answer at all, and if the insurer wants specific, definite information, it is its duty to return the proofs with information as to the defects to be remedied, and ask for more specific proofs: Ins. Co. v. Cusick, 109 Pa. 157. The jury have found, in effect, that the defendant did receive these proofs of loss. All the authorities show that it cannot hold the proofs of loss with knowledge of the defects in them, and then, on the trial, attempt to avail itself of the defects unless it has notified the insured and given him a chance to correct them. Failing in this, it will be

presumed that it is satisfied with the proofs as received in the first instance.

The fourth assignment is to the refusal of the court to give binding instructions for the.defendant. No discussion of this is necessary. It was clearly a case for the jury.

Being of the opinion that the case was rightly tried, and that no reversible error was committed, all the assignments are overruled.

Judgment affirmed.